629 A.2d 721

Donna KOMORNIK

v.

Gregory Lester SPARKS.

No. 135, Sept. Term, 1992.

Court of Appeals of Maryland.

Aug. 26, 1993.

Dennis F. O'Brien (White, Mindel, Clarke & Foard, Towson, all on brief), for appellant.

Paul D. Bekman (Scott R. Scherr, Israelson, Salsbury, Clements & Bekman, all on brief), Baltimore, for amicus curiae Maryland Trial Lawyers' Ass'n.

Edward C. Mackie (Rollins, Smalkin, Richards & Mackie, Baltimore), all on brief, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

The issue here is whether punitive damages are available in this motor vehicle negligence action in which the defendant was intoxicated at the time of the accident. Applying *Owens–Illinois v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992), the Circuit Court for Baltimore County ruled that the evidence was insufficient to support a finding of "actual malice." We agree.

The appellant, Donna Komornik (Komornik), was injured at dusk on December 22, 1989, in a four-vehicle accident caused by the appellee, Gregory Lester Sparks (Sparks), then age thirty. Komornik had been stopped for approximately thirty seconds at a red light for southbound traffic on Merritt Boulevard at its intersection with Holabird Avenue when her automobile was struck in the rear by the car behind her, causing her to strike the car in front of her. The car behind Komornik had been propelled forward when it was struck in the rear by a pick-up truck driven by Sparks and owned by his sister. Sparks had been travelling southbound on Merritt Boulevard at a speed of approximately twenty m.p.h. when he saw the brake lights of the cars stopping or stopped at the

traffic signal. He applied the clutch rather than the brake.[1] Damage to the Pontiac Firebird driven by Komornik was approximately $1,000, while damage to the pick-up truck was approximately $1,700.

At the time of the accident, Sparks was intoxicated. Prior to the commencement of the trial in this civil action, Sparks admitted liability for the accident. Based on that admission and on *Zenobia*, Sparks moved *in limine* to preclude, as irrelevant to any issue in the case, any evidence of his intoxication and of his driving record. After a chambers conference, the parties went on the record. The court announced that, relying on *Zenobia*, punitive damages could not be awarded and, therefore, the motion *in limine* was granted. Komornik then placed on the record a proffer of proof, set forth below, that forms the basis for this appellate review.

The action proceeded to trial before a jury. No instruction on punitive damages was given. The jury's verdict in favor of Komornik awarded compensatory damages. No issue is raised on this appeal concerning that aspect of the case.[2]

Komornik appealed to the Court of Special Appeals, contending that "[t]he trial court erred in concluding that the decision of the Court of Appeals in *Zenobia* requires proof of intent to injure, evil motive, or ill will in order to recover punitive damages in a tort action against an intoxicated driver." This Court, on its own motion, issued the writ of certiorari prior to consideration of the matter by the Court of Special Appeals.

The proffer made by Komornik adds the facts set out below.

---

1. This version of the immediate cause of the accident is the one which Komornik in her brief considers to be most favorable to her. It is derived from the deposition testimony of Sparks. Komornik, however, testified that, while stopped at the traffic signal, she heard brakes, looked in her rear view mirror, and then her car was struck from the rear and propelled into the vehicle standing in front of her.

2. The verdict for Komornik was "equal to her medical bills alone." Appellant's Brief at 4.

On the day of the accident, Sparks had left work at noon, went to a local lounge, ate lunch, and drank beer in an amount he professed he could not recall. He then proceeded, with a friend driving, to another bar where he drank sour mash whiskey and Coca–Cola in an amount he cannot recall. Sparks's friend then dropped Sparks off at home, where he lived with his parents and sister. Sparks did not own an automobile at the time, but he wanted to go Christmas shopping. Seeing his sister's keys in their customary location on top of a desk, he took the keys and drove his sister's pick-up truck. Sparks apparently became lost, and, after driving around for about one hour, found himself on Merritt Boulevard. As Sparks approached a line of cars stopped at a red light, he attempted to stop, but he depressed the clutch rather than the brake pedal, causing the four-car collision.

The Baltimore County police officer who investigated the accident noted that Sparks had been drinking. Sparks did not pass various field sobriety tests "to the officer's satisfaction." Sparks consented to the administration of a breathalyzer test, which indicated a blood alcohol content of .19, almost twice the level of prima facie intoxication.[3] Sparks was ultimately convicted of driving on this occasion while intoxicated, in violation of Md.Code (1977, 1992 Repl.Vol.), § 21–902(a) of the Transportation Article (TR).[4]

Komornik also proffered records of the Motor Vehicle Administration reflecting Sparks's driving record. In his oral summary of that record Komornik's counsel noted a May 1982 probation before judgment for driving under the influence, and a December 1984 conviction for driving while intoxicated. The latter resulted in an assessment of twelve points against

---

3. See Md.Code (1974, 1992 Cum.Supp.), § 10–307(e) of the Courts and Judicial Proceedings Article, stating that an alcohol concentration of "0.10 or more ... shall be prima facie evidence that the defendant was driving while intoxicated."

4. Although not part of the proffer, we are advised that Sparks was sentenced to fifteen days in jail and a $200 fine. Appellant's Brief at 2 n. 1.

his driving record and a restricted license for three years. In November 1989 Sparks refused a blood alcohol test so that his motor vehicle operator's license was suspended. After the subject accident, Sparks was convicted of driving under the influence based on the November 1989 arrest. The suspension for the November 1989 test refusal was in effect when the December 22, 1989, accident occurred, although Sparks, on deposition, indicated that he was unaware of that suspension. Sparks was not charged with driving at the time of the subject accident on a suspended license.

*Zenobia* held:

"Therefore, we overrule *Smith v. Gray Concrete Pipe Co.*[, 267 Md. 149, 297 A.2d 721 (1972) ] and its progeny, including *Nast v. Lockett*, 312 Md. 343, 539 A.2d 1113 (1988). In a non-intentional tort action, the trier of facts may not award punitive damages unless the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, *i.e.*, 'actual malice.' *See Davis v. Gordon,* . . . 183 Md. [129,] 133, 36 A.2d [699,] 701 [ (1944) ]."

325 Md. at 460, 601 A.2d at 652–53 (footnotes omitted).

Having used the term " 'actual malice,' " we immediately recognized in a footnote following that term that it

"has meant different things in the law, that its popular connotation may not always be the same as its legal meaning, and that its use has been criticized. Nevertheless, we simply use the term in this opinion as a shorthand method of referring to conduct characterized by evil motive, intent to injure, ill will, or fraud."

325 Md. at 460 n. 20, 601 A.2d at 652 n. 20 (citations omitted).

So that there could be no misunderstanding of the scope of *Zenobia*'s holding, we inserted the following footnote at the end of the holding, quoted above:

"The scope of this opinion primarily encompasses the standard of conduct which will support an award of punitive damages in so called non-intentional tort cases, *i.e.* negligence and strict liability cases. In addition, our overruling

of the [*H & R Block v.] Testerman* [275 Md. 36, 338 A.2d 48 (1975) ], *–Wedeman [v. City Chevrolet,* 278 Md. 524, 366 A.2d 7 (1976) ] 'arising out of contract' principle is applicable to all tort actions. We shall not at this time, however, reconsider or modify the legal principles concerning the type of conduct which will support an award of punitive damages in so-called intentional tort actions, *i.e.,* tort actions other than negligence and strict liability. To some extent, the applicable legal principles are reviewed in *Schaefer v. Miller,* 322 Md. 297, 319–320, 587 A.2d 491, 502–503 (1991)."

325 Md. at 460 n. 21, 601 A.2d at 653 n. 21.[5]

In June of this year we filed the opinion in *Adams v. Coates,* 331 Md. 1, 626 A.2d 36 (1993), where we addressed a claim for punitive damages in an action between former partners. The underlying cause of action was either a purported tort of breach of fiduciary duty or an action for accounting. We said that in either event the claim for punitive damages "would be controlled" by the policy stated in *Zenobia,* namely:

" '[P]unitive damages are awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability.' "

331 Md. at 13, 626 A.2d at 42 (quoting *Zenobia,* 325 Md. at 454, 601 A.2d at 649 (citations omitted)).

In the case before us there is insufficient evidence of "actual malice," as defined in *Zenobia* to express the punitive damage standard for non-intentional (negligence and products liability) tort cases. Komornik's proffer presents no facts from which a jury would be permitted, under *Zenobia,* to infer that Sparks's conduct was characterized by evil motive, intent to injure, ill will, or fraud. Indeed, the proffer reflects that, at the time of the accident, Sparks's state of mind was to the contrary of that required by *Zenobia.* His intent was to avoid injury to

---

**5.** Judge McAuliffe concurred and Judge Bell dissented. All other members of the Court joined in the opinion in *Zenobia.*

those stopped ahead of him. He had not been traveling at an excessive speed, and he was attempting to stop the truck.

Komornik, however, rests her primary argument on another holding in *Zenobia* that supplemented the general principle set forth above. After stating the general principle our opinion in *Zenobia* next considered how that principle should be applied in actions involving products liability, whether predicated on a theory of negligence or of strict liability. We recognized that "it is not likely that a manufacturer or supplier of a defective product would specifically intend to harm a particular consumer." *Id.* at 461, 601 A.2d at 653. On that aspect of the case *Zenobia* concluded:

"We believe that in products liability cases the equivalent of the 'evil motive,' 'intent to defraud,' or 'intent to injure,' which generally characterizes 'actual malice,' is actual knowledge of the defect and deliberate disregard of the consequences. Therefore, in order for actual malice to be found in a products liability case, regardless of whether the cause of action for compensatory damages is based on negligence or strict liability, the plaintiff must prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect."

*Id.* at 462, 601 A.2d at 653. We made plain that, by "actual knowledge," we did not mean constructive knowledge, *id.*, and that, by "conscious or deliberate disregard," we did not mean "negligence alone, no matter how gross, wanton, or outrageous." *Id.* at 463, 601 A.2d at 654.

Komornik submits that the facts of her case also show conduct that is the equivalent of "actual malice." She compares Sparks to a defective product. Three prior instances of driving while intoxicated or under the influence, coupled with an afternoon of drinking on the day of the accident, are pointed to by the plaintiff to demonstrate actual knowledge of the defective condition of the "product," namely, reduced sensory perceptions, impaired judgment, and delayed reactions. Under Komornik's analogy, other users of the highway

are compared to those members of the public who come in contact with a defective product. They are placed "at high risk." Brief of Appellant at 11. The submission is that "[j]ust as the corporate defendant does not chose a specific victim to be injured by the consciously marketed defective product . . ., the voluntarily intoxicated operator of a motor vehicle takes his victims from the highway at random." *Id.* Komornik concludes that Sparks's "repeated decision to become severely intoxicated and operate a motor vehicle on the highways, putting all who [lawfully] are on those roadways . . . at severe risk . . . is the equivalent or worse than [the conduct] recognized . . . in *Zenobia* as being sufficiently egregious to warrant a punitive award." *Id.* at 12.

The Maryland Trial Lawyers' Association joins in the foregoing submission in an *amicus curiae* brief.

The analogy is flawed. When the supplier of a defective product puts the product into the stream of commerce the supplier surrenders control over the product to a large extent (excluding warnings, recalls, and the like). If the supplier relinquishes control with *actual* knowledge of the defect and "a conscious or deliberate disregard of the foreseeable harm," *Zenobia*, 325 Md. at 462, 601 A.2d at 653, the supplier acts with "actual malice." Here, Sparks had not relinquished control of the truck; he was trying to control it. While the evidence was sufficient to show that Sparks had actual knowledge that he was intoxicated, the evidence also shows that he was *not* consciously disregarding the consequences of his drunkenness. He was trying to stop the truck which would have been stopped under similar circumstances by a sober driver. Sparks, admittedly, was negligent and liable to compensate the victims of his negligence. For purposes of punitive damages under *Zenobia*, however, characterizing the degree of the negligence is immaterial. The relevant inquiry for punitive damages is whether the proof shows conduct characterized by evil motive, intent to injure, ill will, or fraud.

Essentially Komornik argues that a jury could find that Sparks's conduct manifests a "conscious or deliberate disre-

gard of the foreseeable harm." *Id.* at 462, 601 A.2d at 653. But Komornik's effort to dilute the standard of actual malice, as defined in *Zenobia*, and to return to some form of imputed malice, fails to appreciate the effect of *Zenobia*'s overruling of *Smith* and of *Nast*, and the effect of its return to the standard of *Davis v. Gordon*. Both effects were integral to the principle governing punitive damages.

The relevant Maryland legal history may be reviewed quickly. In *Davis v. Gordon*, 183 Md. 129, 36 A.2d 699 (1944), a pedestrian, walking along the shoulder of a road at night, was struck and instantly killed by a motorist. The plaintiff-administrator was granted an instruction under which the jury could, and did, award punitive damages if it found that the motorist was "grossly and wantonly negligent in the operation of his automobile." *Davis v. Gordon*, Record Extract at 36. This Court reversed, saying that "[i]n this State that [instruction] is not the test." *Davis*, 183 Md. at 133, 36 A.2d at 701. "On the contrary, ... there must be an element of fraud, or malice, or evil intent...." *Id.* The issue was revisited in dicta in *Conklin v. Schillinger*, 255 Md. 50, 257 A.2d 187 (1969), where the Court said:

> "The difficulty in the Maryland cases arises in regard to factual situations in which there is no evidence of *actual intent* to injure or of *actual malice* toward the injured person, but in which the defendant's conduct is of such an extraordinary character as possibly to be the legal equivalent of such actual intent or actual malice, sometimes described as 'wanton,' 'reckless disregard of the rights of others,' and the like."

*Id.* at 71, 257 A.2d at 198.

*Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 297 A.2d 721 (1972), partially relying on the above-quoted passage from *Conklin*, accepted the argument advanced by the plaintiff in a motor vehicle tort case that negligence sufficient to convict for the crime of manslaughter should be the precedent for punitive damages, at least in motor vehicle tort cases. *Id.* at 167–68, 297 A.2d at 731–32. *Smith* regarded "a 'wanton or reck-

less disregard for human life' in the operation of a motor vehicle, with the known dangers and risks attendant to such conduct, as the legal equivalent of malice." *Id.* at 168, 297 A.2d at 731. The *Smith* Court thought it was adopting "a standard which, although stopping just short of wilful or intentional injury, contemplates conduct which is of an extraordinary or outrageous character." *Id.*

The *Smith* test was applied in *Nast v. Lockett,* 312 Md. 343, 539 A.2d 1113 (1988). There, a motorist's blood alcohol content was .12% when the statutory *prima facie* proof of intoxication was .13%. *Id.* at 354–56, 539 A.2d at 1118–19. The accident occurred when that motorist, after failing fully to execute a U-turn, and while attempting to complete the maneuver, backed the vehicle into the path of oncoming traffic. *Id.* at 347–48, 539 A.2d at 1115. After reviewing the Maryland automobile manslaughter cases, we concluded that the evidence was insufficient to show that the motorist had a wanton or reckless disregard for human life. *Id.* at 366–67, 539 A.2d at 1124–25. The result would be different, however, if the motorist were intoxicated. *Id.* at 366–67, 539 A.2d at 1125.

In Part IV.B. of the opinion in *Zenobia,* we reevaluated the *Smith* test and concluded:

"The implied malice test adopted in *Smith v. Gray Concrete Pipe Co.* has been overbroad in its application and has resulted in inconsistent jury verdicts involving similar facts. It provides little guidance for individuals and companies to enable them to predict behavior that will either trigger or avoid punitive damages liability, and it undermines the deterrent effect of these awards."

325 Md. at 459, 601 A.2d at 652. *Zenobia* returned to the *Davis v. Gordon* test of "conduct ... characterized by evil motive, intent to injure, ill will, or fraud, *i.e.,* 'actual malice.'" 325 Md. at 460, 601 A.2d at 652. That is the test that we apply here.

The Maryland Trial Lawyers' Association, citing numerous cases from many American jurisdictions, urges that, as a matter of public policy, punitive damages should be allowed

where a motor vehicle tort is committed by a driver who has drunk alcoholic beverages to excess. A rule allowing punitive damages based on driving while intoxicated, or driving under the influence, *per se*, is inconsistent with *Zenobia*'s touchstone of "actual malice." That is why *Zenobia* overruled *Nast v. Lockett* under which driving under the influence was insufficient, in itself, for awarding punitive damages, but driving while intoxicated would ordinarily be sufficient. Further, *Zenobia* reaffirmed a passage in *Davis v. Gordon* that had rejected the implied malice standard there advocated because it would not further either the punishment or deterrence objectives of punitive damages. *Zenobia*, 325 Md. at 456, 601 A.2d at 650. *Davis v. Gordon* had said:

> "We have many rules of the road, all designed and intended to promote the public safety. They have severe penalties for their violation whether there is an accident or not. If all drivers and all pedestrians observed these rules there would not be any accidents. The rules of the road are far more effective than any inflammatory verdicts in making our streets and highways safe for travel. The fear of arrest is more of a deterrent than a verdict in a civil case for damages."

183 Md. at 133, 36 A.2d at 701. In the half century since *Davis v. Gordon* was decided, there have been added to the criminally enforced rules of the road the administrative sanctions imposed by the Motor Vehicle Administration for the suspension or revocation of the motor vehicle operators' licenses of drinking drivers. *See* TR §§ 16–205 through 16–205.2.[6]

---

6. We recognize that, across the entire band of torts of all kinds which the *Zenobia* principle governs concerning the award of punitive damages, application of the principle to tortious injury caused by driving while intoxicated is fairly debatable as a matter of social policy. We also note that House Bill 322 of the 1993 session of the Maryland General Assembly would have returned to a standard of "wanton or reckless disregard for human life" in such cases, but that the bill failed on third reading in the House for want of a constitutional majority under Md. Const. art. III, § 28.

For all the foregoing reasons, the circuit court correctly applied *Zenobia* in ruling that Komornik had not proffered a case for punitive damages.

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.*

Concurring Opinion by McAULIFFE, J.

McAULIFFE, Judge, concurring.

I concur in the result. I disagree with the Court's conclusion that nothing short of actual malice will support an award of punitive damages in a negligence action. I adhere to the view I expressed in my concurring opinion in *Owens–Illinois v. Zenobia*, 325 Md. 420, 476–78, 601 A.2d 633 (1992), that outrageous conduct sufficient to support a conviction for second degree murder under the "depraved heart" theory should be treated as the legal equivalent of actual malice, and should be sufficient to permit consideration of an award of punitive damages.

In *Conklin v. Schillinger*, 255 Md. 50, 71, 257 A.2d 187 (1969), this Court said:

> The difficulty in the Maryland cases arises in regard to factual situations in which there is no evidence of *actual intent* to injure or of *actual malice* toward the injured person, but in which the defendant's conduct is of such an extraordinary character as possibly to be the legal equivalent of such actual intent or actual malice.... (Emphasis in original.)

Unfortunately, the *Conklin* Court went on to describe the legal equivalent of actual malice in the overly broad terms " 'wanton,' 'reckless disregard of the rights of others,' and the like." *Id.* Building upon these terms, the Court ultimately held that a showing of gross negligence would be sufficient to generate the issue of punitive damages. *See Smith v. Gray Concrete Pipe Co.*, 267 Md. 149, 297 A.2d 721 (1972); *Nast v. Lockett*, 312 Md. 343, 539 A.2d 1113 (1988). In *Zenobia*, we overruled *Smith* and *Nast*, finding that the test had been

"overbroad in its application and ha[d] resulted in inconsistent jury verdicts involving similar facts." 325 Md. at 459–60, 601 A.2d 633.

A retreat from the test of gross negligence does not mean that we must adhere only to the test of actual malice. The Court so held in *Zenobia*, when it adopted a test for punitive damages in a products liability case that it termed the "equivalent" of actual malice. We should do likewise in motor-tort cases, adopting as the test the criminal analogue of conduct sufficient to support a finding of murder in the second degree if death had resulted. I find it baffling that boardroom conduct can be punished by punitive damages but barroom conduct cannot.

To repeat what I said in *Zenobia*, 325 Md. at 477–78, 601 A.2d 633, I would apply the following test in non-intentional tort cases:

A person who is actually aware that his action involves a clear and serious danger of substantial harm to the plaintiff or anyone in the plaintiff's class, and who unreasonably takes such action with flagrant indifference as to whether anyone will be harmed or not, should be liable for punitive damages if his conduct causes the foreseeable harm. This type of outrageous conduct, being just short of intentional harm, warrants such a sanction. Although the requisite conduct and state of mind will often include gross negligence, the test would not be met by a showing of gross negligence alone.

Because the conduct described in the case before us does not meet this test, I agree that the judgment below should be affirmed.

Concurring Opinion by CHASANOW, J.

CHASANOW, Judge, concurring.

I concur in the holding of the Court that punitive damages are not warranted in the instant case. My reason for writing separately is to respond to the Court's discussion about when punitive damages may be awarded in unintentional tort suits.

The majority says that "the test we apply here" is whether the conduct is " 'characterized by evil motive, intent to injure, ill will, or fraud, *i.e.,* "actual malice." ' " 331 Md. 720, 729, 629 A.2d 721, 726 (1993) (quoting *Owens–Illinois v. Zenobia,* 325 Md. 420, 460, 601 A.2d 633, 652–53 (1992)). For reasons I will elaborate on below, I think this test is inadequate as the yardstick for determining whether punitive damages are assessable.

Recently in *Zenobia,* this Court substantially modified punitive damages law in the context of a products liability case. Up until the instant case, we have not, except perhaps in *dicta,* expressly modified prior punitive damages law in areas other than products liability. The Court today expressly overrules several prior cases, and suggests we are merely returning to the law as it was set forth in *Davis v. Gordon,* 183 Md. 129, 36 A.2d 699 (1944). It seems to me the Court is not merely reverting back to previously superseded punitive damages law. Instead, the Court is modifying punitive damages law in tort cases " 'in light of changed conditions or increased knowledge, that the rule has become unsound in the circumstances of modern life, a vestige of the past, no longer suitable to our people.' " *Julian v. Christopher,* 320 Md. 1, 9, 575 A.2d 735, 739 (1990) (quoting *Harrison v. Mont. Co. Bd. of Educ.,* 295 Md. 442, 459, 456 A.2d 894, 903 (1983)). The "test" which the majority purports to resurrect from *Davis* is inadequate in the instant case for the same reasons it was held to be inadequate in *Zenobia.* Instead of looking backward for an archaic test for "actual malice," the Court should look forward as we did in *Zenobia* and formulate an improved "equivalent" test for actual malice.

To put punitive damages in perspective, punitive damages are imposed as punishment and, although they have been held constitutional, they are a windfall to plaintiffs and are imposed without the fundamental protections we require of any other form of punishment imposed by law. There are no real standards for determining the proper amount of punitive damages, and even where the legislature has established a maximum fine for specified conduct, punitive damages for that

conduct can exceed the maximum legislatively established fine.
For example, Maryland Code (1957, 1992 Repl.Vol.), Article
27, § 342(f)(2) provides for a maximum fine of $500 for theft
under $300. If punitive damages were awarded for a theft
under $300, they obviously need not be limited to the statutory
maximum of $500. Double jeopardy protections do not apply
to punitive damages. A defendant may be punished by multi-
ple awards of punitive damages to several plaintiffs for the
same act. Punitive damages are supposed to be imposed to
punish the defendant's conduct, but since they go to the
plaintiff, sympathy for the plaintiff will often influence the
amount. Except in punitive damages cases, we would certain-
ly not permit a system where a prosecutor gets some, or all, of
the fines assessed by the court. We would say the prosecu-
tor's motives should be to seek punishment and deterrence,
not personal financial gain. In punitive damages cases the
plaintiff is acting as the public's prosecutor, but the plaintiff's
motive generally is personal financial gain. It should be
obvious that punitive damages have few of the safeguards that
are afforded when other punishments are imposed by law.

There are other criticisms about the way we assess punitive
damages which I need not reiterate here. For such criticisms,
see, *e.g.,* D. Ellis, *Fairness and Efficiency in the Law of
Punitive Damages,* 56 S.Cal.L.Rev. 1 (1982); J. Ghiardi, *The
Case Against Punitive Damages,* 8 Forum 411 (1972); J.
Long, *Punitive Damages: An Unsettled Doctrine,* 25 Drake
L.Rev. 870 (1976); J. Mallor & B. Roberts, *Punitive Dam-
ages: Toward a Principled Approach,* 31 Hastings L.J. 639
(1980); J. Sales & K. Cole, *Punitive Damages: A Relic That
Has Outlived Its Origin,* 37 Vand.L.Rev. 1117, 1154 (1984)
("the amount of punitive damages awarded in recent years . . .
has escalated to astronomical figures that boggle the mind").

There are numerous anecdotal accounts of punitive damages
awards in the millions of dollars, as well as awards that have
amounted to death sentences for corporations and been ruin-
ous to individuals. There is a definite increase in the incidenc-
es of, and size of, punitive damages awards. 2 J. Ghiardi & J.
Kircher, *Punitive Damages: Law and Procedure* § 21.01, at 2

(1985). A 1987 RAND Corporation study found a 2,400% increase in the number of punitive damages awards in Cook County, Illinois from 1960–64 to 1980–84, and over a 250% increase in San Francisco County for the same period. The study also found a 4,200% increase in the median punitive damages award in Cook County during that period, and a 270% increase in San Francisco County. Peterson, et al., *Punitive Damages—Empirical Findings, The Institute for Civil Justice (The RAND Corporation, 1987), cited in* R. Blatt, et al., *Punitive Damages: A State–By–State Guide to Law and Practice* § 1.4, at 11–12 (1991). As we said in *Zenobia*,

> "[a]ccompanying this increase in punitive damage claims, awards and amounts of awards, is renewed criticism of the concept of punitive damages in a tort system designed primarily to compensate injured parties for harm."

*Zenobia*, 325 Md. at 451, 601 A.2d at 648. For these reasons, the Court in *Zenobia* and in the instant case has imposed new restrictions on punitive damages.

Neither the instant case nor *Zenobia* involves intentional torts and neither expressly decides whether "actual malice" is required for punitive damages in intentional tort actions, or whether implied malice is still sufficient. I would point out, however, that requiring the equivalent of actual malice uniformly for punitive damages in all tort actions would be consistent with *Zenobia*'s holding, its *dicta* discussing express and implied malice in torts arising out of contract, 325 Md. at 453–55, 601 A.2d at 649–50, and its criticism of the implied malice standard.

> "The implied malice test ... has been overbroad in its application and has resulted in inconsistent jury verdicts involving similar facts. It provides little guidance for individuals and companies to enable them to predict behavior that will either trigger or avoid punitive damages liability, and it undermines the deterrent effect of these awards." (Footnote omitted).

*Zenobia,* 325 Md. at 459, 601 A.2d at 652. For these reasons, and because I believe there should be uniform rules for the imposition of punitive damages, in the balance of this opinion I will not differentiate between intentional and unintentional torts.

In *Zenobia,* we dealt with punitive damages in a products liability case. Although *Zenobia* contained a great deal of *dicta,* the standard for punitive damages formulated in *Zenobia* was quite narrow. In *Zenobia* we clearly did not *apply* a test of "evil motive, intent to injure, ill will, or fraud." We specifically held that definition "does not translate easily into products liability cases." *Zenobia,* 325 Md. at 460, 601 A.2d at 653. Instead we formulated and applied a totally new test for punitive damages which we held to be "the equivalent" of actual malice. *Zenobia,* 325 Md. at 462, 601 A.2d at 653. That test was (1) actual knowledge of the product's defect, including deliberately shutting one's eyes to the defect, and (2) conscious or deliberate disregard of, or a willful refusal to recognize, foreseeable harm. *Id.* at 462 & n. 23, 601 A.2d at 653–54 & n. 23.

For all torts, we should do the same as we did in *Zenobia.* We should formulate a clear test for "the equivalent" of actual malice—a test which, as did the test in *Zenobia,* sets forth the punishable state of awareness. That test for actual malice should be the same as, or similar to, the test formulated and actually applied in *Zenobia.*

I suggest that the test for punitive damages for drunk driving accidents or other torts should not be broader or more inclusive than the test for punitive damages in products liability cases. There is perhaps a better reason for awarding punitive damages in products liability cases than in most other torts, including drunk driving tort cases. There is no effective criminal sanction universally used to punish manufacturers of dangerously defective products, therefore, punitive damages are the only effective way to punish and deter manufacturers who might otherwise be inclined to deliberately risk the welfare of the consuming public for the lure of profit. A

manufacturer's only deterrent might be the risk of substantial punitive damages. Conversely, more deterrence exists for drunk drivers than punitive damages. It is inconceivable that any drunk driver would think "I am not deterred by the possibility of being sentenced to a year in jail or the possibility of losing my license, or the possibility of injuring myself; however, if I hurt someone else, in addition to being entitled to compensatory damages, that person might also be entitled to punitive damages—that scares me." As we noted in *Davis*, 183 Md. at 133, 36 A.2d at 701, "The rules of the road are far more effective than any inflammatory verdicts in making our streets and highways safe for travel. The fear of arrest is more of a deterrent than a verdict in a civil case for damages."

In defining "actual malice" in the instant case, the majority states: "*Zenobia* returned to the *Davis v. Gordon* test of 'conduct . . . characterized by evil motive, intent to injure, ill will, or fraud, *i.e.,* "actual malice."' *Zenobia*, 325 Md. at 460, 601 A.2d at 652. That is the test that we apply here." 331 Md. at 729, 629 A.2d at 726. The majority is incorrect. The test for "actual malice" that was formulated and applied in *Zenobia* was not the *Davis* test. Instead, the test applied in *Zenobia* was (1) actual knowledge of the product's defect, and (2) conscious or deliberate disregard of, or a willful refusal to recognize, foreseeable harm. *Zenobia*, 325 Md. at 462, 601 A.2d at 653–54. That test is no where found in, or distilled from, the definition of actual malice discussed in *Davis*. *Zenobia* recognized that the *Davis* test for "actual malice" did not work in products liability cases, so the Court formulated a new test which it called *"the equivalent"* of the actual malice that was discussed in *Davis*. The *Davis* test for "actual malice" does not work any better in other tort cases than it does in products liability cases. We should not simply parrot an ineffective standard. We should do as we did in *Zenobia*— formulate an "equivalent" test. Instead of expanding the *dicta* in *Zenobia* about an antiquated definition of actual malice which the Court did not apply, we should expand the *holding* in *Zenobia* and the actual test the Court applied in *Zenobia*.

I would further note that, although purporting to simply return to the *Davis* "actual malice" definition, the majority in fact modifies that definition. The actual malice test the majority adopts, and attributes to *Davis,* is conduct "characterized by evil motive, intent to injure, ill will or fraud. . . ." 331 Md. at 729, 629 A.2d at 726. That is not the *Davis* test. The actual *Davis* test is "to entitle one to such [punitive] damages there must be an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act." *Davis,* 183 Md. at 133, 36 A.2d at 701. The test articulated by the majority is a subtle but significant modification of the test articulated in *Davis.* The majority added "intent to injure" and "ill will" to the *Davis* test, and it removed "malice" and "oppression." The majority apparently recognizes that *Davis*'s "actual malice" test is inadequate and alters it. If the majority is going to alter the *Davis* test, it should do so in a more helpful manner. Instead of resurrecting and subtly modifying an antiquated definition of actual malice, which gives insufficient guidance to judges or juries, we should do just as we did in *Zenobia* and establish a more meaningful "equivalent" of those words.

In setting out its "actual malice" criteria for punitive damages, the majority seems to approve "evil motive" and "ill will" as alternatives to its new "intent to injure" requirement. If a defendant acts with "ill will" or "evil motive," apparently the defendant does not have to intend to do the specific act and/or intend that the act will cause injury. The majority's test seems to be an alternative of either *Davis*'s punishable frame of mind (evil motive and ill will) or punishable state of mind (intent to injure). Any test for punitive damages should do as *Zenobia* did and clearly set out the requirements of an intentional act and recognition of foreseeable injury. We should jettison vague terms like "evil motive" or "ill will" or "fraud" unless it is intentional fraud accompanied by a recognition of foreseeable injury.

Telling a jury that it may award punitive damages if the defendant's conduct was "characterized by evil motive, intent to injure, ill will, or fraud" gives the jury an overinclusive,

vague menu and is confusing. The majority, in my opinion quite properly, focuses only on the "intent to injure" alternative, which, as previously noted, was not part of the original *Davis* test. The majority opinion states that "at the time of the accident, Sparks's state of mind was to the contrary of that required by *Zenobia*. His intent was to avoid injury to those stopped ahead of him. He had not been traveling at an excessive speed, and he was attempting to stop the truck." 331 Md. at 725–26, 629 A.2d at 724. The problem with the majority's standard is not with the "intent to injure" requirement; it is with the alternative forms of actual malice under the majority's test. Could the jury find Sparks' conduct was "characterized by evil motive" if he was driving to a tavern to get even more drunk? Could the jury find his conduct was "characterized by ill will" if he told people in the bar that he hated everyone in this town? Could his conduct be "characterized by fraud" if he was permitted to drive his sister's car only because he lied to her and told her he was sober? If we are going to permit punitive damages, we should have a clearly articulated test that enables the trier of fact to more rationally decide when punitive damages can be assessed.

An effective test for punitive damages can be distilled from our *Zenobia* holding and, as we did in that case, the Court should establish the "equivalent" of actual malice for all tort cases. As to the required state of mind, we should simply extend *Zenobia* and hold that, as a basis for punitive damages, the defendant must have committed an intentional act, not a negligent act, and not even a grossly negligent act. Second, we should require the defendant to have known that the act would cause foreseeable injury or to have willfully refused to recognize that the act would cause foreseeable injury. This is the same basic test that we used in *Zenobia*, and it should be universally applied. The Court should take a progressive step forward based on the *holding* in *Zenobia*, not a regressive leap backwards based on the *dicta* in *Zenobia*.

Dissenting Opinion by ROBERT M. BELL, J.

ROBERT M. BELL, dissenting.

I respectfully dissent. I continue to adhere to the views expressed in my dissenting opinion in *Owens–Illinois v. Zenobia*, 325 Md. 420, 478–86, 601 A.2d 633, 661–65 (1992).

The appellant argues, on the basis of the definition of actual malice this Court enunciated in *Zenobia* as applicable in products liability cases, that the Court recognized that " 'actual malice' in its pure sense will be absent in any 'non-intentional' torts as the terms are close to being mutually exclusive." Appellant's Brief at 7. That, and the test it spawned, leads the appellant to formulate a similar test for intoxicated drivers:

> a bad faith decision by the Defendant to voluntarily consume excessive amounts of alcohol, have knowledge of the danger associated with driving in this condition and in conscious and deliberate disregard of the threat to the safety of the other persons on the highway, drive.

Appellant's Brief at 8. In other words, the appellant believes that, in an appropriate case, of which the case *sub judice* is one, the circumstances may be such that the legal equivalent of ill-will evil motive, and intention to injure may be inferred from an intoxicated driver's conduct. I agree.