709 A.2d 1222

**LE MARC'S MANAGEMENT CORPORATION et al.**

v.

**Francisco VALENTIN.**

**No. 129, Sept. Term, 1996.**

Court of Appeals of Maryland.

May 19, 1998.

Michael P. DeGeorge, Columbia, for appellant.

Charles M. Tobin (Hopkins & Sutter, on brief), Washington, DC, for appellee.

Argued before BELL, C.J., ELDRIDGE, RODOWSKY, CHASANOW, RAKER and WILNER, JJ., and ROBERT L. KARWACKI, Judge (retired), Specially Assigned.

ELDRIDGE, Judge.

This case concerns the appropriate standard, under Maryland common law, for the allowance of punitive damages in defamation actions.

In late 1987 Francisco Valentin, having lived all but the first year of his life in Puerto Rico, moved to New York City in the hopes of improving his limited mastery of the English language and in search of better job opportunities. He immediately went to work as a stock room clerk at Le Marc's Fifth Avenue Cards, Inc., a Hallmark card store owned by Le Marc's Management Corp.[1] In May 1988 Valentin and other

---

1. Hereafter we shall refer to both corporations collectively as "Le Marc's."

Hispanic employees at the store were given polygraph tests to determine if any of the employees were stealing or knew of thefts that were occurring. The polygraph examiner reported to Robert Sauer, Le Marc's corporate administrator, that he believed that Valentin "was holding back information," but it was difficult to interpret the polygraph results because of the "language barrier."

Valentin testified that on June 6, 1988, he submitted a letter of resignation to and received a letter of recommendation from his manager, John Cefai. His original letter of resignation was not introduced into evidence and, apparently, has never been found. Sauer testified that it was not in Valentin's personnel file, and Valentin testified that he did not make a copy of the letter for his records. Valentin further testified that the letter stated that he was leaving Le Marc's because he was planning to move to Maryland to pursue a college education.

Once Valentin relocated to Maryland, he was employed as a sales trainee at a furniture store until July 1989 when he applied for and was hired as a teller-trainee for Sovran Bank. With Valentin's permission, the Bank mailed reference requests to his former employers. Upon Le Marc's receipt of the request, Sauer consulted his computer database and returned the reference form to the Bank stating that Valentin was "terminated due to pilferage." The Bank then placed Valentin on suspension and told him that he had four days to clear his record or he would permanently lose his job.

Valentin immediately telephoned Sauer and explained his dilemma. Sauer promised to investigate the matter and to call the Bank immediately if he discovered that there was an error in the reference. The following day, Valentin traveled to New York in order to meet with Sauer in person. Upon learning that Valentin was waiting to see him, Sauer testified that he read Valentin's employment file and determined that Valentin had not been terminated for pilfering and that the original reference was in error.

Sauer then met with Valentin and explained that there was not a copy of his resignation letter in his file and asked him if he had a copy. Sauer also testified that Valentin was questioned about whether or not, during his tenure with Le Marc's, he had actual knowledge that other employees were stealing. Sauer was concerned about Valentin's knowledge of employee thefts because in Valentin's personnel file were notes that Valentin had, indeed, told Cefai that he suspected some of his fellow employees were stealing merchandise. Sauer then left the room, drafted a document, and when he returned he presented it to Valentin asked him to sign it. The document included language indicating that, while Valentin never personally stole merchandise, he later discovered other employees were stealing and that he "did not want to say anything to my manager about [this] ... situation[ ]." Valentin signed the document, believing that Sauer would then call and write a letter to the Bank clearing his name.

Sauer testified that he telephoned the Bank and spoke to Sheila Balog in the Bank's personnel department; he also testified that he sent the Bank a letter correcting the original erroneous reference to which he attached the above described document. The letter that Sauer sent, purporting to correct the first reference, stated in pertinent part: "Thus Francisco's reason for termination was stated incorrectly due to human error. Our physical file on Francisco does not reflect a pilferage situation directly with him. Please strike from the record this reason for termination."

Balog testified that she had no recollection of any conversation with Sauer, nor did she remember Valentin's specific situation. She did testify, however, that the statements in the letter and the attached document did not clear Valentin's name. Rather, she testified, the letter and the attached document cast doubt on Valentin's "credibility," indicated that he was "covering [something] up," and had told the Bank a "half truth."

On September 18, 1989, the Bank terminated Valentin for falsifying his employment application and indicated that he was ineligible for future employment.

On August 17, 1990, Valentin filed this defamation action in the Circuit Court for Montgomery County against Le Marc's Management Corp. and Le Marc's Fifth Avenue Cards, Inc. The case was tried before a jury in May 1993. The jury found that Valentin was defamed and awarded him $25,000 in compensatory damages and $130,000 in punitive damages. Le Marc's filed motions for judgment notwithstanding a verdict, a new trial, and remittitur. Valentin filed a motion for a new trial. The trial court denied all the motions except the remittitur, and entered judgment in Valentine's favor for $25,000 compensatory damages and $75,000 punitive damages. Both parties appealed, and in an unreported opinion the Court of Special Appeals affirmed the compensatory damages, but vacated the punitive damages award. The basis of the reversal was the failure of the trial court properly to instruct the jury that the standard of proof for any punitive damages award is clear and convincing evidence. Both parties filed petitions for a writ of certiorari, which we denied.

The case was retried solely on the issue of punitive damages. The jury was properly informed that the standard of proof for the allowability of punitive damages is clear and convincing evidence. The jury also received, *inter alia,* the following instruction:

> "Malice exists, one, when the person making the statement deliberately lies or makes the statement with knowledge that it is false or with reckless disregard as to its truth or falsity or, two, when the person making the statement had an obvious reason to distrust either the accuracy of the statement or the source from which the person learned of the statement or, finally, item three, when the statement is invented by the person making it or is so inherently improbable that only a reckless person would say, write, or print it."

The jury returned an award of punitive damages for Valentin in the amount of $700,000.[2] The trial court denied Le Marc's

---

2. The verdict sheet given to the jury stated as follows:

motions for judgment notwithstanding a verdict, a new trial and remittitur. Le Marc's filed a timely notice of appeal. Prior to consideration of the case by the Court of Special Appeals, we issued a writ of certiorari.

Le Marc's argues that the trial court's jury instruction permitted the award of punitive damages under a standard no longer consistent with Maryland law. Specifically, it asserts that the above-quoted instruction does not meet the standard for the allowability of punitive damages set forth in *Owens–Illinois v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992), and its progeny. Not surprisingly, Valentin argues that the proper standard was used. He maintains that the trial court's instruction was consistent with the standard set forth in our prior opinions in defamation cases.

In *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Supreme Court held that the First Amendment prohibits a public official or public figure from recovering damages for a defamatory falsehood unless the plaintiff first establishes, by clear and convincing evidence, that the defendant acted with "actual malice," defined as "knowledge that it was false or with reckless disregard of whether it was false or not." In *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), a defamation case involving a private plaintiff, a media defendant, and a matter of public concern, the Supreme Court held that, in such an action, the First

---

"One: Do you find that the plaintiff has proven actual malice by clear and convincing evidence that defendants had actual knowledge of falsity or a reckless disregard for the truth? Either yes or no. If your answer is no, then you have completed your deliberations. If your answer is yes, proceed to question two.

Question Two: Do you award punitive damages to plaintiff? Either yes or no. If your answer is yes, enter below the sum which you award.

Question Three: Was the conduct of the defendants characterized by clear and convincing evidence of ill-will, spite or hatred? either yes or no."

The jury answered the first two questions in the affirmative and the third question in the negative.

Amendment precluded the recovery of compensatory damages unless the plaintiff at least established negligence. The Court further held that, in order to be entitled to punitive damages in such a case, the plaintiff must prove, by clear and convincing evidence, that the defamatory statements were made with "actual malice" which it defined as statements made with actual knowledge of the falsity or with reckless disregard of the truth.

In a series of cases decided shortly thereafter, this Court held as a matter of Maryland common law, *inter alia*, that, in *any* defamation action, regardless of a party's status or the subject matter, punitive damages are allowable only if the plaintiff proves that the defamatory statement was made with knowledge of its falsity or with reckless disregard for the truth. We held that actual malice in the sense of ill-will, spite, hatred, or intent to injure, would not suffice to support an award of punitive damages in any defamation action. *See Marchesi v. Franchino*, 283 Md. 131, 387 A.2d 1129 (1978); *General Motors Corp. v. Piskor*, 277 Md. 165, 175, 352 A.2d 810, 817 (1976); *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976).[3] *See also Telnikoff v. Matusevitch*, 347 Md. 561, 591–595, 702 A.2d 230, 244–247 (1997), where the above-cited cases are reviewed in detail.

Subsequently, in *Owens–Illinois v. Zenobia, supra*, 325 Md. at 460, 601 A.2d at 652, a products liability action based on strict liability and § 402A of the *Restatement (Second) of Torts*, we held that generally punitive damages may only be awarded if "the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill-will, or fraud, *i.e.*, 'actual malice.'" Furthermore, we held that, for punitive damages to be recoverable in a product liability action, the plaintiff is required to prove, by clear and convincing evidence, that the defendant had actual knowledge of the defect in the product and that, "armed with this actual

---

**3.** In light of the *Marchesi, Piskor,* and *Jacron* opinions, it is clear that Question Three should not have been included on the verdict sheet in the case at bar.

knowledge, the defendant consciously or deliberately disregarded the potential harm to consumers." 325 Md. at 463, 601 A.2d at 654.

Following *Zenobia,* this Court has consistently required that punitive damages only be awarded based on the defendant's conscious wrongdoing. Thus, in *Montgomery Ward v. Wilson,* 339 Md. 701, 733, 664 A.2d 916, 932 (1995), involving punitive damages in malicious prosecution and false imprisonment actions, we stated that

> "in a number of recent decisions this Court has clarified and modified the standards for the allowability of punitive damages in tort cases. With respect to both intentional and non-intentional torts, we have held that an award of punitive damages generally must be based upon actual malice, in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud. *See, e.g., Ellerin v. Fairfax Savings,* 337 Md. 216, 652 A.2d 1117 (1995); *Komornik v. Sparks,* 331 Md. 720, 725, 629 A.2d 721, 723 (1993); *Owens–Illinois v. Zenobia, supra,* 325 Md. at 454, 601 A.2d at 649–650. *See also Alexander v. Evander,* 336 Md. 635, 650 A.2d 260 (1994)."

*See also, e.g., Scott v. Jenkins,* 345 Md. 21, 690 A.2d 1000 (1997) (battery and false arrest); *ACandS v. Asner,* 344 Md. 155, 686 A.2d 250 (1996) (product liability); *Owens–Corning v. Garrett,* 343 Md. 500, 682 A.2d 1143 (1996) (negligence and strict liability); *ACandS v. Godwin,* 340 Md. 334, 667 A.2d 116 (1995) (product liability); *U.S. Gypsum v. Baltimore,* 336 Md. 145, 647 A.2d 405 (1994) (product liability).

While none of the above-cited cases specifically involved defamation, we have repeatedly stated that in all tort actions, an award of punitive damages must be based upon " 'conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud,' " *Scott v. Jenkins, supra,* 345 Md. at 33, 690 A.2d at 1006, quoting *Montgomery Ward v. Wilson, supra,* 339 Md. at 733, 664 A.2d at 932. "Maryland law has limited the availability of punitive damages to situations in which the defendant's conduct is characterized by knowing

and deliberate wrongdoing," *Ellerin v. Fairfax Savings,* 337 Md. 216, 228, 652 A.2d 1117, 1123 (1995). *See also Komornik v. Sparks, supra,* 331 Md. at 732–739, 629 A.2d at 727–731 (Chasanow, J., concurring).

 Consequently, under our recent decisions, punitive damages may only be awarded if the plaintiff proves, by clear and convincing evidence, that the defendant had the requisite mens rea, *i.e.,* actual knowledge, to support such an award. Applying the principle of the recent opinions to defamation actions leads to the conclusion that punitive damages are allowable in such actions only when the plaintiff establishes that the defendant had actual knowledge that the defamatory statement was false.[4]

The Court's recent opinion which is most pertinent to the present case is *Ellerin v. Fairfax Savings, supra,* 337 Md. 216, 652 A.2d 1117, involving the appropriate standard for the allowance of punitive damages in actions of fraud or deceit. We began our analysis in *Ellerin* with an examination of the elements of a fraud or deceit action, in order to determine if the requisite malice was, indeed, an element of the tort. The opinion stated (337 Md. at 229, 652 A.2d at 1123, quoting *Nails v. S & R,* 334 Md. 398, 415–416, 639 A.2d 660, 668–669 (1994)):

> " 'In order to recover damages in an action for fraud or deceit, a plaintiff must prove (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.' "

---

4. We note, as we have in several cases, that "actual knowledge ... does include the wilful refusal to know." *Owens–Illinois v. Zenobia,* 325 Md. 420, 462 n. 23, 601 A.2d 633, 654 n. 23 (1992). For an explanation of this very limited concept, *see State v. McCallum,* 321 Md. 451, 458–461, 583 A.2d 250, 253–255 (1991) (Chasanow, J., concurring).

Focusing our attention on the second element, we held that, although a defendant may be liable for compensatory damages if the above elements are proven, the defendant will not *per se* be subject to punitive damages. Specifically, the Court held that punitive damages in a deceit action may only be awarded if the plaintiff proves that the defendant had actual knowledge of the falsity. We pointed out in *Ellerin* that a representation made with "reckless indifference" as to the truth "does not mean actual knowledge of the falsity." 337 Md. at 235, 652 A.2d at 1126. Rather, "reckless indifference" in the context of a deceit action means the defendant's making a statement with the knowledge that he or she does not know whether it is true or false. In other words, the defendant has actual knowledge that he or she did not know whether the statement was true or false, but, with reckless indifference to the truth, made the statement with the intent of deceiving the listener. Therefore, while "reckless indifference" does encompass a level of actual knowledge, it is not a level sufficient to satisfy the actual knowledge of falsity required for punitive damages. The Court concluded in *Ellerin* that " 'reckless disregard' or 'reckless indifference' concerning the truth of the representation falls short of the mens rea which is required to support an award of punitive damages." 337 Md. at 235, 652 A.2d at 1126.

It is clear that the holding in *Ellerin* supports actual knowledge of the falsity as the sole standard for the award of punitive damages in defamation cases as well. Like fraud or deceit actions, the tort of defamation requires the plaintiff to prove that the defendant's statement was false. But the alternate standard heretofore applied for punitive damages in defamation cases, namely "reckless disregard" for the truth, is no greater than the level of scienter required by the "reckless indifference" standard rejected in *Ellerin.*

In *St. Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the Supreme Court held, *inter alia*, that certain statements made about a public official were not made with a "reckless disregard" for the truth. While the Court made clear that "reckless disregard" must be determined on a

case by case basis, it did give guidance regarding the definition of "reckless disregard." It stated that the defendant must have made the false statement with a " 'high degree of awareness of . . . probable falsity' [or] . . . entertained serious doubts as to the truth" of the publication. 390 U.S. at 731, 88 S.Ct. at 1325, 20 L.Ed.2d at 267, quoting *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 216, 13 L.Ed.2d 125, 133 (1964). *See also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510, 111 S.Ct. 2419, 2430, 115 L.Ed.2d 447 (1991); *Harte–Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 667, 109 S.Ct. 2678, 2686, 105 L.Ed.2d 562 (1989); *Bose Corp. v. Consumers Union of the United States*, 466 U.S. 485, 503, 104 S.Ct. 1949, 1961, 80 L.Ed.2d 502 (1984).

Neither "entertainment of serious doubts" nor "awareness of . . . probable falsity" approaches the mens rea of actual knowledge required in *Ellerin*. Arguably, such a standard falls short of the "reckless indifference" standard there rejected. It is clear, however, that "reckless disregard," as defined above, certainly does not surpass the level of mens rea encompassed by "reckless indifference." Thus, as a matter of Maryland common law, "reckless disregard" must be rejected as a standard for the award of punitive damages in defamation cases.

■ Because the jury was not properly instructed as to the basis for the allowability of punitive damages in defamation cases, we shall vacate the judgment for punitive damages and remand for a new trial on the punitive damages issue.

Le Marc's also contends that there was insufficient evidence to support, by clear and convincing evidence, the knowing falsity standard. It also contends that the amount of the award was excessive and that certain evidence was erroneously permitted to be introduced. Since we have vacated the punitive damages award, it is not necessary to reach the excessiveness or evidentiary issues. At the new trial the parties are not limited to the evidence presented below, nor are they limited by previous evidentiary rulings. *See Middle States v. Thomas*, 340 Md. 699, 703–704, 668 A.2d 5, 7–8

(1995); *Owens–Illinois v. Zenobia, supra,* 325 Md. at 469–473, 601 A.2d at 657–659, and cases there cited. As to sufficiency, it must be remembered that the plaintiff and the trial court were guided somewhat by the overly broad "reckless disregard" standard for punitive damages set forth in our earlier defamation cases. Once the evidence is introduced at the new trial, the trial court must determine if there is sufficient evidence, under the principles set forth in this opinion, to present the issue of punitive damages to the jury. If the trial court determines that submission of the issue to the jury is warranted, it must instruct the jury that punitive damages may be awarded to the plaintiff only if there is clear and convincing evidence that the defendant had actual knowledge that the defamatory statement it made was false.

*JUDGMENT FOR PUNITIVE DAMAGES OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED, AND CASE REMANDED TO THAT COURT FOR A NEW TRIAL ON PUNITIVE DAMAGES. COSTS TO BE PAID BY THE PLAINTIFF–APPELLEE.*

BELL, C.J., dissents.

BELL, Chief Judge, dissenting.

The majority opinion today continues the inexorable campaign that this Court began in 1992, in *Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992), to eliminate punitive damages and thereby insulate certain reprehensible. conduct from proper punishment. Its intent, the majority will protest, is not the elimination of punitive damages, but the assurance that such damages are awarded when they serve a real function; however, the elimination of punitive damages is the effect when the standard for the allowance of punitive damages is raised to a level that is virtually impossible to meet.[1] By requiring, in addition to clear and convincing proof,

---

1. My views on, and concern about, raising the bar with respect to the proof of entitlement to punitive damages were set forth at length in *Owens–Illinois, Inc. v. Zenobia,* 325 Md. 420, 478, 601 A.2d 633, 662 (1992)(Bell, J., concurring and dissenting). I continue to believe the

that the plaintiff prove that the defendant's actions were the product of "conscious wrongdoing," 349 Md. 652, 709 A.2d 1226 (1998) or " 'knowing and deliberate wrongdoing,' " *id.* at 652, 709 A.2d at 1226 (quoting *Ellerin v. Fairfax Savings*, 337 Md. 216, 229, 652 A.2d 1117, 1123 (1995)), this Court has raised the bar of proof of punitive damages, which has been the drill since *Zenobia*. And that practice of raising the bar has had the effect of virtually eliminating punitive damages in Maryland. In fact, since *Zenobia*, this Court has reversed the judgment awarding punitive damages, or affirmed the reversal of such awards by the intermediate appellate court, in nearly every case in which the issue was raised. *See Scott v. Jenkins*, 345 Md. 21, 690 A.2d 1000 (1997); *ACandS v. Asner*, 344 Md. 155, 686 A.2d 250 (1996); *Owens–Corning v. Garrett*, 343 Md. 500, 682 A.2d 1143 (1996); *Middle States v. Thomas*, 340 Md. 699, 668 A.2d 5 (1995); *ACandS v. Godwin*, 340 Md. 334, 667 A.2d 116 (1995); *Montgomery Ward v. Wilson*, 339 Md. 701, 664 A.2d 916 (1995); *Ellerin v. Fairfax Savings*, 337 Md. 216, 652 A.2d 1117 (1995); *Alexander v. Evander*, 336 Md. 635, 650 A.2d 260 (1994); *U.S. Gypsum v. Baltimore*, 336 Md. 145, 647 A.2d 405 (1994); *Komornik v. Sparks*, 331 Md. 720, 629 A.2d 721 (1993); *Adams v. Coates*, 331 Md. 1, 626 A.2d 36 (1993); *Caldor v. Bowden*, 330 Md. 632, 625 A.2d 959 (1993); *Eagle–Picher v. Balbos*, 326 Md. 179, 604 A.2d 445 (1992); *Owens–Illinois v. Armstrong*, 326 107, 326 Md. 107, 604 A.2d 47 (1992). Only in *Macklin v. Robert Logan Associates*, 334 Md. 287, 312, 639 A.2d 112, 124 (1994) did we allow a punitive damages award to stand, but that was solely because we determined that the defendant in that case, the tenant, was not entitled to discretionary review of a punitive damages judgment entered against it because the issue had not been preserved for review.

I once again write in protest of the allowance of reprehensible conduct being insulated from punishment by way of puni-

---

views expressed therein are correct. Indeed, events and decisions, including the one today, over the last six years, have buttressed that belief.

tive damages. In this case, the majority has changed the standard for award of punitive damages in defamation cases. Before today, this Court had held that the proof required for the award of punitive damages was knowledge that the defamatory statement was false or that it was made with reckless disregard for the truth. *See Marchesi v. Franchino*, 283 Md. 131, 139, 387 A.2d 1129, 1133 (1978); *General Motors Corp. v. Piskor*, 277 Md. 165, 174, 352 A.2d 810, 817 (1976); *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 601, 350 A.2d 688, 700 (1976). Although consistent with the pronouncements of the Supreme Court on the subject of the standard, *see New York Times Co. v. Sullivan*, 376 U.S. 254, 286, 84 S.Ct. 710, 729, 11 L.Ed.2d 686 (1964); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 348, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974), this Court went even further by applying that standard to all cases. Today, citing *Zenobia* and its progeny, and, in particular, *Ellerin*, the majority overrules these cases and replaces the standard they announced with one requiring that the plaintiff establish the defendant's actual knowledge of the falsity of the defamatory statement.

The majority reasons from *Ellerin*'s analysis of the distinction between "reckless indifference" and "actual knowledge." That analysis concluded that "reckless indifference," although one of the elements of fraud or deceit and although sufficient to support an award for compensatory damages, was not in fact, the equivalent of "actual knowledge." While acknowledging that acting with "reckless indifference" indicates that the defendant has "actual knowledge" of his or her lack of knowledge as to the veracity or falsity of the statement, the majority asserts that is not enough; what must be shown is that the defendant knew, in fact, that the statement was false. Applying that rationale to the requirement in defamation cases that the statement be made with "reckless disregard" of the truth, the majority reaches the identical result in this defamation case as it reached in *Ellerin*, a deceit case.

I dissented in *Ellerin*, taking issue with the change in the law and noting that the conduct reflected in proceeding with

"reckless indifference" was no less reprehensible than the conduct engaged in with actual knowledge:

"It has long been the law of Maryland and, thus, well settled, that a defendant, intending to mislead the plaintiff and fully aware that he or she does not know whether the representation he or she makes is true or false, commits the tort of fraud or deceit. *E.g., Robertson v. Parks,* 76 Md. 118, 131, 24 A. 411, 412 (1892). The rationale underlying the rule is that making a representation of a fact, with intent to deceive and actual knowledge that the speaker does not know whether it is fact or not, is as much a misrepresentation as one made with actual knowledge of falsity and that actual knowledge of the former is as repre-- hensible as actual knowledge of the latter. Fully recognizing the state of the law, ... but noting that 'Maryland cases concerning fraud or deceit have typically involved the form of the tort which is characterized by the defendant's deliberate deception of the plaintiff by means of a representation which he knows to be false,' the majority nevertheless 'refines' the actual knowledge prong of the tort, to include only that situation.... And it does so, fully cognizant that, as traditionally understood, the tort countenanced no amount of negligence, however gross.... There is absolutely no basis for the majority's change of the law."

337 Md. at 244, 652 A.2d at 1131 (citations omitted). Because of the majority's reliance on *Ellerin,* those comments are just as applicable to this case.

An additional observation is in order. The damage to the defamed person is the same whether the defamer actually knows that what he or she is saying is false or simply knows that he or she does not know if the statement is true or false. What is more and most distressing to me is that after today, it simply will not be important to ensure that what is communicated about another person is true. As I interpret the majority opinion, as long as there is no evidence that the defamer actually knew the information was false and, I suppose, did not shut his or her eyes to what must have been obvious, it does not matter that a brief investigation would have made

clear the falsity of the statement; the defamer may publish a false statement about the plaintiff with impunity, without any investigation beyond his or her own records, and, yet, remain insulated from the risk of punitive damages.[2] And you can bet that after today's opinion that is precisely what will happen with more and more frequency.

I dissent, most respectfully.

---

2. The jury was instructed, after all:
"Malice exists, one, when a person making the statement deliberately lies or makes the statement with knowledge that it is false or with reckless disregard as to the truth or falsity or, two, when the person making the statement had an obvious reason to distrust either the accuracy of the statement or the source from which the person learned of the statement or, finally item three, when the statement is invented by the person making it or is so inherently improbable that only a reckless person would say, write, or print it."