690 A.2d 1000

**Robert SCOTT**

v.

**Terry Napoleon JENKINS.**

**No. 29, Sept. Term, 1996.**

Court of Appeals of Maryland.

March 14, 1997.

Jay H. Creech (Barbara L. Holtz, Sean D. Wallace, Paul M. Mayhew, on brief), Upper Marlboro, for Petitioner.

No argument on behalf of Respondent.

Michael T. Wharton, Debra S. Block, Wharton Levin Ehrmantraut Klein & Nash, P.A., Annapolis, for The Product Liability Advisory Council, Inc., amicus curiae.

Hugh F. Young, Jr., Reston, Va., of counsel, amicus curiae in support of petitioner.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

KARWACKI, Judge.

This appeal concerns the pleading requirements for a claim of punitive damages. We are asked whether a complaint seeking monetary damages for a tort must make a specific claim for punitive damages and whether that complaint must set forth facts that, if proven true, would entitle the plaintiff to punitive damages. The answer to both questions is yes. Consequently, for the reasons explained below, we shall reverse the judgment of the Court of Special Appeals.

## I.

During the investigation of an assault and battery unrelated to the case *sub judice,* Prince George's County Police Officer, Corporal Robert Scott, Petitioner, assisted in the detention of a juvenile suspect. Scott was informed by Terry N. Jenkins, Respondent, that someone other than the detainee was responsible for the crime. For reasons disputed by the parties, Jenkins and Scott engaged in a scuffle, resulting in Jenkins' arrest for battering Corporal Scott. Jenkins testified at the trial below that the State *nolle prossed* his battery charge.

Shortly thereafter, Jenkins filed a Complaint and a demand for a jury trial in the Circuit Court for Prince George's County. Jenkins subsequently filed an Amended Complaint charging Scott, and others,[1] individually and in their official

---

1. The Jenkins Amended Complaint also named Prince George's County and Police Officer, C. Richardson, as defendants. These codefendants of Jenkins were dismissed by the trial court prior to trial for reasons unrelated to the issues presented in this appeal.

capacities, with counts of assault, battery, false arrest, false imprisonment, slander, and intentional infliction of emotional distress. Jenkins' Amended Complaint demanded judgments for each count:

"1. For damages in the amount of $500,000.00.

2. For costs plus interest.

3. For such other and further relief as the court may deem just and proper."

Jenkins' Amended Complaint neither made a specific claim for punitive damages, nor did it allege that Scott acted with actual malice.

Following the close of all evidence at trial, Jenkins requested the submission of a punitive damages instruction to the jury. Scott objected, pointing out that Jenkins failed to plead punitive damages in his original and Amended Complaints and that no mention of punitive damages was made during trial until the discussion of jury instructions with the trial judge. The court overruled Scott's objection, noting that Jenkins' claim of $500,000 damages, given the nature of the case, should have forewarned Scott that punitive damages were being sought. Scott also objected to the form of the punitive damages instruction.

The jury returned a verdict in Jenkins' favor on the false arrest and battery counts, awarding him $150.00 compensatory damages, and $1,000.00 punitive damages. The verdict sheet did not indicate upon which of the two counts submitted to the jury the punitive award was predicated.[2]

------

2. The verdict sheet recreated in its entirety appeared as follows:

"In the Circuit Court for Prince George's County, Maryland

TERRY NAPOLEON JENKINS *
 Plaintiff *
v. * CAL90–23661
Corporal Robert Scott *
 Defendant *

Scott appealed the judgment based on that verdict to the Court of Special Appeals, claiming that the trial court erroneously instructed the jury on punitive damages when Jenkins failed to specifically claim or plead such damages in his Amended Complaint. Noting that Jenkins' complaint averred that Scott had "placed his finger in Jenkins's nostril, that Scott was verbally abusive to Jenkins, that Scott beat Jenkins, and that Jenkins acted with due care at all times and did nothing to provoke such abusive behavior[,]" *Scott v. Jenkins,* 107 Md.App. 440, 443, 668 A.2d 958, 960 (1995), the intermediate appellate court concluded that "Scott was notified adequately of Jenkins' intent to seek punitive damages at trial." *Scott,* 107 Md.App. at 445, 668 A.2d at 960. We granted Scott's petition for certiorari to consider the adequacy of Jenkins' "claim" for punitive damages.

## II.

Of the necessities for the prosecution of a successful lawsuit, none is more important than the pleading. It is the first, and sometime the last, opportunity a plaintiff has to make his or her case. Although Maryland abandoned the formalities of common law pleading long ago, it is still a fair comment to say that pleading plays four distinct roles in our system of jurisprudence. It (1) provides notice to the parties

---

Verdict Sheet

1. Was defendant Corporal Robert Scott guilty of battery [i.e., did defendant Scott intentionally and unlawfully touch Terry Napoleon Jenkins in a harmful or offensive manner]?
 Yes __✓__ No _____

2. Was defendant Corporal Robert Scott guilty of false arrest [i.e., did defendant Scott detain Terry Napoleon Jenkins for purpose of prosecution for misdemeanor battery without probable cause]?
 Yes __✓__ No _____

Note: If your answer is "No" to Questions 1 and 2, STOP and go no further. If your answer is "Yes" to Question 1 or 2 or both, answer Question 3.

3. What damages do you award plaintiff Jenkins?
 a. Compensatory: $ __150.00__
 b. Punitive: $ __1,000.00__ "

as to the nature of the claim or defense; (2) states the facts upon which the claim or defense allegedly exists; (3) defines the boundaries of litigation; and (4) provides for the speedy resolution of frivolous claims and defenses. JOHN A. LYNCH, JR. & RICHARD W. BOURNE, MODERN MARYLAND CIVIL PROCEDURE § 6.1 (1993). Of these four, notice is paramount. *American Express Co. v. State*, 132 Md. 72, 74, 103 A. 96, 96 (1918); *Pearce v. Watkins*, 68 Md. 534, 538, 13 A. 376, 377 (1888); *see also Early v. Early*, 338 Md. 639, 658, 659 A.2d 1334, 1343 (1995)("The Court has no authority, discretionary or otherwise, to rule upon a question not raised by the pleadings, and of which the parties therefore had neither notice nor an opportunity to be heard.").

To that end, Maryland Rule 2–303(b) requires that each claim in a pleading

"be simple, concise, and direct. No technical forms of pleadings are required. A pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief or ground of defense. . . . "

### III.

In the context of a negligence action, we have previously held that a sufficient pleading must "allege, with certainty and definiteness, facts and circumstances sufficient to set forth (a) a *duty* owed by the defendant to the plaintiff, (b) a *breach* of that duty and (c) injury *proximately* resulting from that breach." *Read Drug and Chemical Co. v. Colwill Constr. Co.*, 250 Md. 406, 412, 243 A.2d 548, 553 (1968)(emphasis in original). Our holding in *Read Drug* flowed from the natural import of the language of former Md. Rule 301 b, now Rule 2–303(b), that a "pleading shall contain only such statements of fact as may be necessary to show the pleader's entitlement to relief[.]" Md. Rule 2–303(b).

In that regard, any claim for relief based upon an alleged tort, intentional or non-intentional, must allege facts, if proven true, sufficient to support each and every element of the asserted claim. In a civil battery action, for example, a

well-pleaded complaint must allege facts sufficient to show that the defendant engaged in an "unpermitted application of trauma ... upon any part of the" plaintiff, proximately causing his or her injuries. *Saba v. Darling,* 72 Md.App. 487, 491, 531 A.2d 696, 698 (1987)(quoting RICHARD J. GILBERT AND PAUL T. GILBERT, MARYLAND TORT LAW HANDBOOK § 3.1 (1986)) *aff'd,* 320 Md. 45, 575 A.2d 1240 (1990). Likewise, in a claim for false arrest, the plaintiff must prove that the defendant deprived him or her of his or her liberty without consent and without legal justification. *Great Atlantic & Pacific Tea Co. v. Paul,* 256 Md. 643, 654, 261 A.2d 731, 738 (1970); *Mahan v. Adam,* 144 Md. 355, 365, 124 A. 901, 905 (1924). As we shall explain, however, facts sufficient to support an intentional or non-intentional tort claim do not necessarily entitle a plaintiff to a punitive damages award.

## IV.

■ We have lately, and at great length, discussed the necessary prerequisites to a punitive damages award. Lest there be any remaining doubt, in order to recover punitive damages in *any* tort action in the State of Maryland, facts sufficient to show *actual malice* must be pleaded and proven by clear and convincing evidence, and a specific demand for the recovery of punitive damages must be made before an award of such damages may be had.

■ Prior to 1972, this Court held fast to a standard requiring "actual malice" before recovery of punitive damages in negligence actions. *See Davis v. Gordon,* 183 Md. 129, 133–34, 36 A.2d 699, 700–01 (1944). With the decision in *Smith v. Gray Concrete Pipe Co.,* 267 Md. 149, 297 A.2d 721 (1972), our predecessors departed from this rule, holding that in automobile negligence cases, implied malice,[3] while falling short "of

---

3. "Implied malice," as we use it here, means non-intentional conduct so reckless or wanton as to be "grossly negligent." This is to be distinguished from conduct motivated by ill will, fraud, intent to injure, or other mens rea exhibiting an evil motive or purpose, or stated

wilful or intentional injury, contemplates conduct which is of an extraordinary or outrageous character" and will support a punitive damages award. *Smith*, 267 Md. at 168, 297 A.2d at 732. That standard was applied as recently as *Nast v. Lockett*, 312 Md. 343, 539 A.2d 1113 (1988).

Shortly after the *Smith* decision, an explosion of punitive damages litigation ensued, fueled in part by two opinions which, in effect, severed punitive damage awards from their historical rationales of punishment and deterrence. *Schaefer v. Miller*, 322 Md. 297, 322, 587 A.2d 491, 503–04 (1991)(Eldridge, J., concurring). Relying primarily upon *Knickerbocker Ice Co. v. Gardiner Dairy Co.*, 107 Md. 556, 69 A. 405 (1908), the Court in *H & R Block, Inc. v. Testerman*, 275 Md. 36, 338 A.2d 48 (1975), while acknowledging that H & R Block exhibited a reckless disregard for the rights of others by employing inexperienced and unqualified employees, nevertheless concluded that punitive damages were recoverable in a tort action arising out of a contractual relationship only upon a showing of "actual malice." Although the Court conceded that punitive damages were potentially recoverable in tort actions arising out of contractual relationships when the contract was broken for the *"sole purpose of wrongfully injuring* the plaintiff," punitive damages based on any other motive would obliterate the distinction between tortious conduct and simple breach of contract. 275 Md. at 44, 338 A.2d at 53 (emphasis in original).

One year later, in *Wedeman v. City Chevrolet Co.*, 278 Md. 524, 366 A.2d 7 (1976), the Court stepped away from *Testerman* and held that when tortious conduct preceded a contractual relationship, implied, rather than actual, malice could support a punitive damages award.[4] "Conduct of an extraor-

_____

otherwise, "actual malice." *See Montgomery Ward v. Wilson*, 339 Md. 701, 728 n. 5, 664 A.2d 916, 930 n. 5 (1995).

4. In *Wedeman*, the plaintiff was fraudulently induced into the purchase of a damaged car sold as first quality. In concluding that the tort did not arise out of the contractual relationship, we pointed out that "it [was] the tortious conduct which induce[d] the innocent party to enter

dinary nature characterized by a wanton or reckless disregard for the rights of others" became sufficient to support such an award. 278 Md. at 532, 366 A.2d at 12.

In a concurring opinion in *Schaefer, supra,* a medical malpractice action which upheld the reversal of a punitive damages award, 322 Md. 297, 587 A.2d 491 (1991), Judges Eldridge, Cole, and Chasanow called upon this Court to abandon the distinction between torts arising out of a contractual relationship versus those that do not, otherwise known as the *Testerman–Wedeman* Rule, and to return to the actual malice standard announced in *Davis, supra.* In its reasoning, the concurrence pointed out that the *Testerman–Wedeman* Rule was (1) unsupported by Maryland authority, *Schaefer,* 322 Md. at 316–18, 587 A.2d at 501–02; (2) inconsistently applied by the Court, 322 Md. at 318–21, 587 A.2d at 502–03; and (3) unrelated to the purposes of punitive damages. 322 Md. at 321–22, 587 A.2d at 503–04.

Within the year, this Court adopted the rationale of the *Schaefer* concurrence. In *Owens–Illinois v. Zenobia,* 325 Md. 420, 601 A.2d 633 (1992), we rejected both the *Testerman–Wedeman* Rule, and the implied malice standard announced in *Smith v. Gray Concrete and Pipe Co., supra.* We held that "in a non-intentional tort action, the trier of fact may not award punitive damages unless the plaintiff has established that the defendant's conduct was characterized by evil motive, intent to injure, ill will, or fraud, *i.e.,* 'actual malice.'" *Zenobia,* 325 Md. at 460, 601 A.2d at 652 (citing *Davis v. Gordon,* 183 Md. at 133, 36 A.2d at 701).

The reasons for the return to the pre-*Smith* rule were far less opaque than the inconsistent cases that the departure from it had spawned. Noting that the "the purpose of punitive damages related entirely to the nature of the defendant's conduct," we concluded that "the availability of punitive damages ought to depend upon the heinous nature of the defen-

---

into the contractual relationship." *Wedeman v. City Chevrolet Co.,* 278 Md. 524, 529–30, 366 A.2d 7, 11 (1976).

dant's conduct," and not upon whether the tortious conduct occurred within the context of a contractual relationship. *Zenobia,* 325 Md. at 454, 601 A.2d at 650 (citing *Schaefer v. Miller,* 322 Md. at 321–22, 587 A.2d at 503) (citations omitted). Moreover, the prophetic warning in *Smith v. Gray Concrete, supra,* that the "implied malice" or as there used, "gross negligence," standard "may be so flexible that it can become virtually unlimited in its application," 267 Md. at 166, 297 A.2d at 731, proved true. "Despite [that] Court's [attempts to limit] the implied malice standard to torts involving the operation of motor vehicles, the standard [was] freely applied to other non-intentional torts." *Zenobia,* 325 Md. at 457, 601 A.2d at 651 (citations omitted).

Perhaps the most compelling reason for casting aside the implied malice standard was its elusive nature. Although the purported basis for assessing punitive damages is to punish and deter particularly reprehensible conduct motivated by a conscious and evil motive, the various formulations of "implied malice" reached conduct that was perhaps reprehensible, but otherwise free of the ill-will appropriately targeted by a punitive damages award.[5] 325 Md. at 458–59, 601 A.2d at 651–52. Not only did this inconsistency expose individuals and companies alike to an ever changing legal landscape which more often concealed, rather than revealed, the conduct subject to a punitive damages award, it also "undermine[d] the deterrent effect of [such] awards." *Id.,* 325 Md. at 459, 601 A.2d at 652 (citing 2 L. SCHLUETER AND K. REDDEN, PUNITIVE DAMAGES, Appendix B, at 418–19 (2d ed.1989))(suggesting that under the "implied malice" standard, potential defendants may either refrain from socially beneficial behavior out of fear, or engage in conduct harmful to society). *See also Owens–*

---

5. *See* American College of Trial Lawyers, *Committee Report on Punitive Damages,* at 6 and n. 23 (1989) ("law of various jurisdictions are evolving to require some conscious indifference to the rights of others before punitive damages are warranted"); *see also Rawlings v. Apodaca,* 151 Ariz. 149, 162, 726 P.2d 565, 578 (1986)(availability of punitive damages restricted to those cases in which defendant's conduct was guided by evil motives).

*Corning v. Garrett,* 343 Md. 500, 538, 682 A.2d 1143, 1161 (1996); *ACandS, Inc. v. Godwin,* 340 Md. 334 at 361–62, 667 A.2d 116, 129 (1995).

In addition to requiring that punitive damages claimants prove "actual malice," *Zenobia* also burdened tort plaintiffs with "establish[ing] by clear and convincing evidence the basis for an award of [such] damages." 325 Md. at 469, 601 A.2d at 657. Following the lead of at least twenty-three other states, we concluded that such a burden was appropriate, given the "penal nature" of punitive damages and "their potential for debilitating harm." *Id.* at 467–49, 601 A.2d at 656–57. In short, although the underlying tort may be proven by a mere preponderance, the evidence supporting the punitive damages claim must be subjected to the more stringent "clear and convincing" standard.

Although the debate underlying *Zenobia* concerned the proper standard for a punitive damages award in non-intentional tort cases, with respect to the tort of false imprisonment, the Court said over fifty years ago in *Heinze v. Murphy* that

"[a]n officer who acts in good faith in making an arrest is absolved from punitive or exemplary damages, even though he is liable for compensatory damages. However, such damages may be allowed against an officer under circumstances upon which bad faith or malice may be attributed to him in making the arrest."

180 Md. 423, 430, 24 A.2d 917, 920 (1942). The Court went on to say that "where damages beyond compensation, to punish the party guilty of a wrongful act, *are asked,* the evidence must show wanton or malicious motive, and it must be actual and not constructive or implied." 180 Md. at 434, 24 A.2d at 922–23 (emphasis added). Since *Zenobia,* we have made it abundantly clear that "with respect to both intentional and non-intentional torts, . . . an award of punitive damages must be based upon actual malice, in the sense of conscious and deliberate wrongdoing, evil or wrongful motive, intent to injure, ill will, or fraud." *Montgomery Ward v. Wilson,* 339

Md. 701, 733, 664 A.2d 916, 932 (1995)(citing *Ellerin v. Fairfax Savings,* 337 Md. 216, 652 A.2d 1117 (1995); *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs.,* 336 Md. 635, 652, 650 A.2d 260, 269 (1994); *Komornik v. Sparks,* 331 Md. 720, 725, 629 A.2d 721, 723 (1993); *Adams v. Coates,* 331 Md. 1, 13, 626 A.2d 36, 42 (1993)).

## V.

As we indicated earlier, the present controversy is prompted by what Scott perceives to be Jenkins' failure to plead adequately his claim for punitive damages, thereby depriving Scott of fair opportunity to respond to the claim. Although the precise issue now raised has never been addressed by this Court, we have offered ample guidance in the past.

### a.

Amicus for Petitioner Scott points out that in *Smith v. Gray Concrete and Pipe Co., supra,* we imposed a strict pleading requirement in punitive or exemplary damages cases. We there said that

> "No bald or conclusory allegations of 'wanton or reckless disregard for human life' or language of similar import, shall withstand attack on grounds of insufficiency. It follows from what we have said that far greater specificity will be required [when pleading punitive damages] than that reflected by the 'Appendix of Forms' accompanying the Maryland Rules."

*Smith,* 267 Md. at 168, 297 A.2d at 732; *see also Nast v. Lockett,* 312 Md. 343, 370, 539 A.2d 1113, 1127 (1988), *overruled on other grounds by Owens–Illinois v. Zenobia,* 325 Md. 420, 460, 601 A.2d 633, 652 (1992). Professors Lynch and Bourne of the University of Baltimore have echoed this sentiment, stating that "[a] plaintiff seeking to recover punitive damages must allege *in detail* in his complaint the facts that indicate the entertainment by the defendant of [an evil motive or intent]." MODERN MARYLAND CIVIL PROCEDURE, *supra* § 6.5(b)(2)(emphasis added). *Cf. Summit Loans, Inc. v. Pecola,* 265 Md. 43, 288 A.2d 114 (1972)(systematic threatening and

vile telephone calls to a debtor sufficient to support a punitive damages award). Our decisions subsequent to *Smith* and *Nast* in no way suggest a departure from that strict pleading requirement.

In upholding Jenkins' punitive damages award, the Court of Special Appeals drew an analogy to consequential damages, being those damages that "the law would impute . . . as the natural, necessary, and logical consequence of the acts of the defendant. [S]uch damages need not be specifically requested in the complaint; instead they may be recovered under a claim for damages generally." 107 Md.App. at 444, 668 A.2d at 958 (*citing Nicholson v. Blanchette*, 239 Md. 168, 180–81, 210 A.2d 732, 738–39 (1965); *Weiller v. Weiss*, 124 Md. 461, 466–67, 92 A. 1028, 1029 (1915)). The intermediate appellate court's analogy is flawed for at least two reasons.

First, as alluded to above, because a higher standard of proof precedes a recovery of punitive damages, it follows that a more detailed factual allegation is necessary to put the other party on notice that such damages are being sought. To suggest otherwise, would allow plaintiffs to hide their hand until the last possible moment and leave defendants unprepared to face a claim for punitive damages. Our rules of pleading are designed to prevent surprise, not encourage it.

A claim that "may" support a punitive damages award, does not necessarily apprise the defendant of the true nature of the claim against him. This is especially so, when, as in the instant case, the pleading fails to expressly demand a judgment for "punitive damages." *See, e.g., Safeway Stores, Inc. v. Barrack*, 210 Md. 168, 175, 122 A.2d 457, 461 (1956)(actual malice necessary to support punitive damages in a false imprisonment claim, but malice is not an element of the tort). A punitive damages award based upon an insufficiently pleaded complaint may render the judgment constitutionally infirm. *See Travelers Indemnity Co. v. Nationwide Constr. Corp.*, 244 Md. 401, 410–411, 224 A.2d 285, 290 (1966)("Where a judgment was outside the cause of action stated in the complaint and the defendant was not given a fair opportunity to defend against

the claim on which the judgment was based, the judgment is invalid and subject to collateral attack.").

Second, punitive damages do not necessarily flow from a tortious act. Rather than representing a specific monetary loss by the plaintiff, punitive damages embody a public policy determination that a particular defendant engaged in heinous and malicious conduct sufficient to warrant the equivalent of a "civil penalty." *See Ellerin v. Fairfax Savings,* 337 Md. at 242 n. 13, 652 A.2d at 1130, n. 13. It has no necessary relation to the loss suffered by the plaintiff, but rather depicts the degree of the defendant's culpability and his ability to pay. *Ellerin,* 337 Md. at 242, 652 A.2d at 1129 (citing *Embrey v. Holly,* 293 Md. 128, 141–42, 442 A.2d 966, 973 (1982)). Moreover, unlike consequential damages, "the trier of fact has the discretion to deny punitive damages even when the record would otherwise support their award." *Adams v. Coates,* 331 Md. 1, 15, 626 A.2d 36, 43 (1993). These considerations demand a high degree of specificity from a plaintiff seeking punitive damages.

### b.

In addition to the factual allegations required by Md. Rule 2–303, Md. Rule 2–305 commands that

"a pleading that sets forth a claim for relief ... *shall contain a clear statement of the facts necessary to constitute a cause of action **and** a demand for judgment for relief sought.* Relief in the alternative or of several different types may be demanded." (Emphasis added).

In assessing this Rule, authors Niemeyer and Schuett have observed that

"If the pleading seeks one type of relief only but has several counts or legal theories to support it, one demand for judgment at the end of the pleading is sufficient. On the other hand, if the pleader seeks different types of relief based upon the nature of the legal theory alleged to support it, the claim for relief is included at the conclusion of each count of the pleading."

PAUL V. NIEMEYER & LINDA M. SCHUETT, MARYLAND RULES COMMENTARY 169 (2d ed.1992, 1995 Supp.). We agree with that assessment. Because, as indicated *supra,* punitive damages serve different ends than do general damage awards, and are therefore properly classified as different in nature, a specific claim for their recovery must be made. *See Falcinelli v. Cardascia,* 339 Md. 414, 423, 663 A.2d 1256, 1260 (1995)("Of course, the recovery, if any, by the plaintiff cannot exceed in nature or amount either the damage proved or the sum claimed in the *ad damnum* [clause].")(quoting *Scher v. Altomare,* 278 Md. 440, 442, 365 A.2d 41, 42 (1976)).

Although our sister state Virginia takes a similar view, *compare Harrell v. Woodson,* 233 Va. 117, 122, 353 S.E.2d 770, 773 (1987)("punitive damages may only be recovered where the plaintiff has made an express claim for them in the prayer for relief . . . sufficient to put the defendant on notice that an award of punitive damages is sought apart from and in addition to, the compensatory damages claimed"), we acknowledge that other jurisdictions do not require a specific claim for punitive damages prior to their award. *See Kubajak v. Ver-Brugge,* 59 Ill.App.2d 344, 348, 207 N.E.2d 344, 350 (1965); *Berkovits v. Hanley,* 40 A.D.2d 921, 922–23, 338 N.Y.S.2d 339, 344 (1972); *Cays v. McDaniel,* 204 Or. 449, 457–58, 283 P.2d 658, 662 (1955); *Tucker v. Reynolds,* 268 S.C. 330, 335, 233 S.E.2d 402, 404 (1977); *see also* 25 C.J.S. *Damages* § 133 (and cases cited therein). Be that as it may, those jurisdictions do not share the generally restrictive view Maryland takes towards punitive damages, militating toward a higher standard of pleading when such damages are sought. The rule we announce today is consistent with that view.

 In sum, in order to properly plead a claim for punitive damages, a plaintiff must make a specific demand for that relief in addition to a claim for damages generally, as well as allege, in detail, facts that, if proven true, would support the conclusion that the act complained of was done with "actual malice." Nothing less will suffice.

██ Viewed in light of the principles articulated above, the trial court erred by submitting Jenkins' punitive damages instruction to the jury. Even assuming that his Amended Complaint specifically and sufficiently alleged facts that would have supported the conclusion that Scott acted with the requisite "actual malice" to support a punitive damages award, Jenkins failed to make a specific claim for such damages. His prayer for damages and general relief were simply insufficient to inform Scott of the extraordinary nature of the additional relief sought against him.

## VI.

Scott also assails the trial court's punitive damages instruction. Given our conclusion that Jenkins' complaint failed adequately to seek exemplary damages, and that therefore his claim for such damages should not have been submitted to the jury, any issue concerning the adequacy of that instruction has been rendered moot.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THAT PORTION OF THE JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WHICH CONSTITUTED PUNITIVE DAMAGES. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.*

BELL, C.J., joins in the result only.