795 A.2d 806

**HERITAGE HARBOUR, L.L.C., et al.,**

**v.**

**JOHN J. REYNOLDS, INC., et al.**

**No. 1026, September Term, 2001.**

Court of Special Appeals of Maryland.

April 3, 2002.

700

Charles R. Diffenderffer (John G. Packard and Brown, Diffenderffer & Kearney, L.L.P., on the brief) Baltimore, for appellants.

John A. King (King & Attridge on the brief for Adelberg Hare & Assn.) Rockville, Arthur T. Norris (Terrence McShane and Lee & McShane, P.C. on the brief for Reifman & Blum Assn.) Washington, DC, (Michael R. Ridberg, Stuart A. Schwager, Ridberg, Press & Sherbill, LLP, Bethesda, and Hartley D. Alley, Los Angeles, CA, on the brief for Building Analytics) for appellees.

Leslie D. Silverman of Beltsville, MD. on the brief for appellee, Dolco Aluminum.

Steven J. Parrott and Nancy Leibowitz Weller of Annapolis, MD. on the brief for appellee, Cochran Plumbing and Heating, Inc.

George D. Bogris, Jeffrey C. Shipley and Whitney & Bogris, LLP of Townson, MD. on the brief for appellees, South River Joint Venture and Ral Designs.

Jeffrey R. Schieler, Brian E. Hoffman and Saunders & Schmieler, P.C. on the brief for appellee, Atlas Air Conditioning Company.

George M. Church, Johan D. Flynn, Church, Loker, Radcliffe & Silver, P.A., Baltimore, on the brief for appellee, Plus One Masonry, Inc.

Steven E. Leder, Susan E. Smith, Niles, Barton and Wilmer, Baltimore, on the brief for appellee, Vanco Enterprises, Inc.

Lee H. Ogburn, David J. Shuster, Kramon & Graham, P.A., Baltimore, on the brief for appellee, Sun Precast Co., Inc.

H. Patrick Stringer, Jr., Mudd, Harrison & Burch, Towson, and Roger O. Robertson, Law Offices of Joseph M. Jagielski, Baltimore, on the brief for appellee, Belfast Valley Contractors.

Argued before DAVIS, SONNER, and GREENE, JJ.

DAVIS, Judge.

This is an appeal from the grant of the motion to dismiss of appellees John J. Reynolds, Inc., et al., by the Circuit Court for Anne Arundel County (Robert H. Heller, J.). Appellants Heritage Harbour, L.L.C., et al., present one question for our review, which we rephrase for clarity as follows:

Did the trial court err in dismissing appellants' complaint for failure to state a claim upon which relief may be granted?

We answer the question presented in the negative and affirm the judgment of the trial court. We hold that the trial court properly dismissed appellants' complaint for failure to state a claim upon which relief may be granted and that, in any event, appellants would not have survived the motion to dismiss because of the Economic Loss Doctrine and appellants' failure to file the required certificate of a qualified expert.

## PROCEDURAL AND FACTUAL BACKGROUND

On December 16, 1998, the Council of Unit Owners of South River Condominium (the Council) filed an eleven-count complaint (the Underlying Suit) against appellants Heritage Harbour, L.L.C., Daniel Aguilar, Jo Ann Aguilar, Columbia Pacific Management, Inc., Securitization Pool, L.P., Richard K. Sontgerath, Daniel R. Baty, and Stanley L. Baty, developers of the South River Condominium Project (the Project). The suit, filed in the Circuit Court for Anne Arundel County, alleged the existence of numerous structural and non-structural defects in the buildings located at the South River Condominiums. Appellants then filed a Petition to Compel Arbitration.[1]

---

1. The petition was still pending as of the date of the initial hearing on

On July 25, 2000, appellants filed a complaint against John J. Reynolds, Inc., Tiber Construction, Belfast Valley Contractors, Inc., South River Joint Venture, Atlas Air Conditioning, Cochran Plumbing, M & W Caulking Applicators, Buchanan Iron Works, Sun Precast, Building Analytics, Coastal Construction & Restoration, Inc., Criterium Hare Engineers (currently trading as Adelberg Hare & Associates, Inc.), RAL Designs, Reifman & Blum Associates, Dolco Aluminum, MLM Concrete, Plus One Masonry, Vanco Enterprises, Inc., Cochran Mechanical, Inc., and Mike Jordan Construction, the Project's original developers, designers, and contractors.[2] The complaint sought contribution and contractual indemnification "[i]n the event that [appellants], individually or jointly, are held or found to be liable to any party to the Underlying Litigation."

Appellees[3] Adelburg, Hare & Associates, Atlas Air Conditioning Co., Belfast Valley Contractors, Inc., Building Analytics, Cochran Plumbing, Inc., Dolco Aluminum, Inc., Plus One Masonry, Inc., RAL Designs, Inc., Reifman & Blum Associates, Inc., South River Joint Venture, Inc., Sun Precast Co., Inc., and Vanco Enterprises, Inc., filed motions to dismiss. Atlas Air Conditioning Co., Belfast Valley Contractors, Inc., Cochran Plumbing & Heating, Inc., Plus One Masonry, RAL Designs, Reifman & Blum Associates, South River Joint Venture, and Vanco Enterprises, Inc., moved to dismiss for failure to state a claim pursuant to Md. Rule 2–322(b)(2). Adelberg, Hare & Associates, Inc., Building Analytics, South River Joint Venture, RAL Designs, and Reifman & Blum Associates moved to dismiss for failure to file the required certificate of a qualified expert pursuant to Md.Code (1998 Repl.Vol.), Cts. & Jud. Proc. (C.J.) § 3–2C–02. Hearings were held on December 6 and 20, 2000. The trial judge issued multiple orders dated December 26, 2000, February 7 and February 23, 2001,

---

the motions to dismiss in the case *sub judice.*

**2.** We do not denominate all defendants in the instant case as appellees, as not all defendants join in the present appeal.

**3.** As the grounds for the instant appeal arise from the trial court's dismissal of the suit, only those parties that filed motions to dismiss are labeled appellees for the purposes of this opinion.

granting appellees' motions to dismiss without prejudice.
These orders dismissed appellants' complaint

[f]or the reasons stated in court on December 6 and December 20, 2000, at the hearings on the various Motions to Dismiss and for the reasons enumerated in the various Memoranda filed on behalf of the various [appellees] in their respective Motions to Dismiss, and for the further reason that [appellants] did not state a claim upon which relief may be granted. . . .

Appellants filed a Motion to Alter and Amend the Court's Order with a Motion for Consolidation and Stay on January 8, 2001, seeking clarification of the trial court's order to more clearly define their issues on appeal. Because the Statute of Repose could expire on appellants' claims, denying them any right of recovery against appellees, appellants additionally asked the trial court to preserve the indemnity and contribution causes of action pending decision on the Petition to Arbitrate in the Underlying Suit. The trial court denied the motion without a hearing. Because some defendants in the case *sub judice* never responded to appellants' complaint nor filed motions to dismiss, the court's order did not constitute a final judgment as to all claims. As a result, appellants were unable to appeal. Upon appellants' motion for final judgment, the circuit court entered a June 12, 2001 order, granting final judgment.

## STANDARD OF REVIEW

We said in *Lubore v. RPM Associates, Inc.*, 109 Md.App. 312, 322–23, 674 A.2d 547 (1996):

Under Maryland Rule 2–322(b)(2) (1996), a defendant may seek a dismissal on the ground that the complaint fails "to state a claim upon which relief can be granted." When moving to dismiss, a defendant is asserting that, even if the allegations of the complaint are true, the plaintiff is not entitled to relief as a matter of law. *Hrehorovich v. Harbor Hosp. Ctr.*, 93 Md.App. 772, 784, 614 A.2d 1021 (1992). Thus, in considering a motion to dismiss for failure to state a claim, the circuit court examines only the sufficiency of the

pleading. *Id.* "The grant of a motion to dismiss is proper if the complaint does not disclose, on its face, a legally sufficient cause of action." *Id.* at 785, 614 A.2d 1021. This Court, therefore, shall assume the truth of all well-pleaded relevant facts as alleged in appellant's complaint and all reasonable inferences drawn therefrom. *Morris v. Osmose Wood Preserving,* 340 Md. 519, 531, 667 A.2d 624 (1995). Accordingly, because they were directly taken from appellant's complaint, we shall assume the truth of the facts set forth above.

When, as here, the trial court does not state its reasons for granting a motion to dismiss, an appellate court will affirm the judgment if the record discloses that the trial court was legally correct. *Briscoe v. City of Baltimore,* 100 Md.App. 124, 128, 640 A.2d 226 (1994). "[A]ny ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Faya v. Almaraz,* 329 Md. 435, 444, 620 A.2d 327 (1993).

## LEGAL ANALYSIS

### *Economic Loss Doctrine*

Appellees contended at oral argument before this Court that the interplay between the pleadings requirements set forth in *Scott v. Jenkins,* 345 Md. 21, 690 A.2d 1000 (1997), and the Economic Loss Doctrine, set forth in *Council of Co-Owners of Atlantis Condominium, Inc. v. Whiting–Turner Contracting Co.,* 308 Md. 18, 517 A.2d 336 (1986), and *Morris v. Osmose Wood Preserving,* 340 Md. 519, 667 A.2d 624 (1995), provides a step-by-step process by which we should conduct our review. That process was reiterated by Chief Judge Robert C. Murphy writing for the Court of Appeals:

Based on *Whiting–Turner,* the plaintiffs argue that we should permit their tort claims to proceed because the roofs present a risk of personal injury. The roofs, plaintiffs argue, cannot support weight and therefore create a risk of physical injury to anyone who goes on them (homeowners, repairmen, or firefighters) and to anyone who may be under them if they collapse under the weight of a heavy snowfall or a strong wind gust. Defendants argue that the risk is

not clear enough to bring the claim within the *Whiting–Turner* exception. Alternatively, they argue that we should abandon the exception or limit its application to cases involving claims against builders or architects. *Whiting–Turner* and *U.S. Gypsum* [*v. Baltimore*, 336 Md. 145, 647 A.2d 405 (1994)], considered together, reveal a two-part approach to determine the degree of risk required to circumvent the economic loss rule. We examine both the nature of the damage threatened and the probability of damage occurring to determine whether the two, viewed together, exhibit a clear, serious, and unreasonable risk of death or personal injury. Thus, if the possible injury is extraordinarily severe, i.e., multiple deaths, we do not require the probability of the injury occurring to be as high as we would require if the injury threatened were less severe, i.e., a broken leg or damage to property. Likewise, if the probability of the injury occurring is extraordinarily high, we do not require the injury to be as severe as we would if the probability of injury were lower.

*Morris,* 340 Md. at 533, 667 A.2d 624.

In order to successfully claim that appellees are liable to them for contribution and/or indemnity, appellants must have alleged that appellees have original tort liability to plaintiffs in the Underlying Suit. *See Parler & Wobber v. Miles & Stockbridge, P.C.,* 359 Md. 671, 756 A.2d 526 (2000). If unable to establish original tort liability, appellants cannot receive contribution or indemnity. Appellees assert that appellants are unable to overcome the initial obstacle because of the Economic Loss Doctrine. In order to circumvent the Economic Loss Doctrine, appellants must allege the existence of a serious risk of injury to persons or property. Appellants have not asserted such liability, appellees maintain; their complaint failed to state a claim and should be barred by the Economic Loss Doctrine.

In delineating the Economic Loss Doctrine, the Court of Appeals explained:

It is generally said that a contractor's liability for economic loss is fixed by the terms of his [or her] contract. Tort liability is in general limited to situations where the conduct of the builder causes an accident out of which physical harm occurs to some person or tangible thing other than the building itself that is under construction.

*Whiting–Turner,* 308 Md. at 23, 517 A.2d 336. An exception to the above rule was established, however:

[T]he determination of whether a duty will be imposed in this type of case should depend upon the risk generated by the negligent conduct, rather than upon the fortuitous circumstance of the nature of the resultant damage. *Where the risk is of death or personal injury* the action will lie for recovery of the reasonable cost of correcting the dangerous condition.

*Id.* at 27, 517 A.2d 336.

Appellants posit that the Economic Loss Doctrine does not apply because their claims are not based in tort; rather, their claims are for contribution and indemnity. As we shall explain, *infra,* appellants' claims for contribution and indemnity are not ripe. In support of their reliance on the exception, appellants remind us that their cause of action is statutory, arising by operation of the Uniform Contribution Among Tort Feasors Act, Md. Ann.Code (1957), art. 50, § 17(a). Their argument is without merit, however, as the plaintiffs in the Underlying Suit allege various torts, including negligence, intentional misrepresentation, negligent misrepresentation, fraudulent concealment, civil conspiracy, and breach of fiduciary duty. Because appellants contend that they are entitled to reimbursement from appellees, they must necessarily contend that appellees committed such torts; therefore, appellants' initial response fails.

 Alternatively, appellants contend that the plaintiffs in the Underlying Suit do, indeed, allege construction defects that give rise to a substantial risk of serious personal injury. In support of their position, appellants cite paragraph 31(f) of the complaint, which alleges structural concerns regarding balcony slabs, paragraph 31(i), which alleges inadequate railing supports, paragraph 31(t), which alleges compromised fire rated walls and slabs, and paragraph 31(w), which alleges

improper installation and operation of a building fire protection system. The allegations contained in the complaint filed in the Underlying Suit, according to appellants' theory of the case, can serve as the basis for their allegations against appellees, as this is an action for contribution and indemnity. Countering that these claims constitute mere possibilities or invitations to speculate, appellees posit that the allegations are insufficient. *See, e.g., Morris,* 340 Md. at 536, 667 A.2d 624.

In order to bypass the Economic Loss Doctrine, appellants must plead clear facts that would support a finding of extreme danger and an imminent risk of severe personal injury. *Id.* No allegations of imminent risk of personal injury or death can be associated with the alleged defects claimed by the plaintiffs in the Underlying Suit, as "[c]onditions that present a risk to general health, welfare, or comfort but fall short of presenting a clear danger of death or personal injury do not suffice." *Id.* at 532–33, 667 A.2d 624. Appellants have failed to allege the existence of any substantial risk to persons or property; therefore, their claims are precluded by the Economic Loss Doctrine.

### Certificate of an Expert

Pursuant to C.J. § 3–2C–02(a)(1), "a claim shall be dismissed, without prejudice, if the claimant fails to file a certificate of qualified expert with the court." According to subsection (a)(2) of the section, this statement "shall contain a statement from a qualified expert attesting that the licensed professional against whom the claim is filed failed to meet an applicable standard of professional care," and "be filed within [ninety] days after the claim is filed." It is undisputed that appellants failed to file the required certificate within the prescribed ninety days; the effect of this failure, however, remains disputed by the parties.

Appellants insist that the requirement does not apply to them—or at the very least should be waived [4]—as their cause

---

4. At oral argument, whether appellants' motion for waiver was filed in a timely manner was raised by the panel. Although an interesting issue of first impression, it is not dispositive of appellants' case. Waiver would be inapplicable here, as the claims clearly allege professional negligence, contrary to counsel's contentions.

of action against appellees is not based in professional negligence; rather, they maintain that their suit sounds in contribution and indemnity. As more specifically discussed, *infra*, we are faced with the ripeness issue. Appellees counter that appellants' request for such remedies must be based on an alleged negligent act or omission. Because appellants do not allege any contractual duties owed to them by appellees, their claims are necessarily based on the allegations of negligence contained in the complaint. Appellants' initial response, therefore, fails.

Appellants argue in the alternative that the requirement was satisfied by the filing of a certificate prepared for the case at bar by Robert W. Davidson, AIA, plaintiffs' expert in the Underlying Suit, and a certificate drafted by their own expert, Kenneth J. O'Connell, Ph.D., P.E. Not surprisingly, appellees counter that the affidavits filed were insufficient—they failed to allege any specific deficiencies in the performance of appellees' duties—and untimely—they were not filed until December 15, 2000. Noting that appellants were required to file the certificates no later than October 25, 2000, or ninety days after the filing of the complaint, appellees argue that filing the certificates forty-five days late is in violation of the statute. As such, they maintain, the trial court properly dismissed the action. We concur with appellees' contention and the decision to dismiss appellants' complaint without prejudice for failure to comply with statutory authority.

### *Failure to State a Claim*

 Notwithstanding appellees' reliance on the Economic Loss Doctrine and appellants' alleged failure to file the required certificate of a qualified expert, the short answer to appellants' assignment of error is that their pleadings were legally deficient. In support of their motions to dismiss,

---

Notwithstanding, it is noteworthy that the General Assembly has amended a similar statute which requires the filing of such certificates in medical malpractice claims. In the amendment, the legislature provided that an extension may be granted when the limitations period has expired and the failure to file the certificate was not willful or the result of gross negligence. *See* C.J. § 3–2A–04(b). The amendment was analyzed in *Roth v. Dimensions Health Corp.*, 332 Md. 627, 632 A.2d 1170 (1993). That the legislature declined to include such a

appellees argued that appellants' pleadings did not contain sufficient facts to establish appellants' entitlement to relief. Moreover, appellees asserted in their filed memoranda, even if the trial court "were to overlook the [c]omplaint's total dearth of allegations establishing a basis for the claims of contribution or indemnity," the complaint must be dismissed because appellants have failed to present a justiciable issue. Appellants responded that they pled with "sufficient detail to place the [appellees] on notice of both the claims against them and the relief sought." In response to appellees' arguments regarding justiciability, appellants argued that their claims were not premature, because "the action was commenced after [appellants] had incurred substantial expenses in defending the Underlying Suit."

As explained by the Court of Appeals in *Scott v. Jenkins, supra,* although Maryland long ago abolished the common law formalities of pleading, the underlying purposes therefor nevertheless remain. To that end, Md. Rule 2–303 requires that a pleading "contain only such statements of fact as may be necessary to show the pleader's entitlement to relief...." Pleadings must provide notice to the parties of the nature of claims, state the facts upon which the claims exist, establish the boundaries of the litigation, and afford the speedy resolution of frivolous claims. *Scott v. Jenkins,* 345 Md. 21, 27–28, 690 A.2d 1000 (1997). The grant of a motion to dismiss is proper if the complaint does not disclose on its face a legally sufficient cause of action. *Rossaki v. NUS Corp.,* 116 Md.App. 11, 695 A.2d 203 (1997).

In the case *sub judice,* appellants provided the following notice to the parties as to the nature of the claims and the facts upon which the claims existed:

> In 1989 through 1991, [appellee], South River Joint Venture, developed a multi-story residential condominium building known as the South River Condominium situate in Annapolis, Maryland (the Condominium).

provision in the section at issue here supports the inference that the grace period should not be extended to parties who fail to timely file the requisite certificate.

The Condominium was designed by various [appellees] including, without limitation, RAL Designs.

The Condominium was constructed by various contractors including, without limitation, Tiber Construction which, upon information and belief, *retained other various [appellees] as subcontractors on the project.*

... [Appellants] *retained various other [appellees],* including without limitation, Building Analytics and Criterium Hare Engineers [a.k.a. Adelburg, Hare & Associates], to evaluate the design, construction, maintenance, and condition of the Condominium.

. . .

[Appellees] are developers, architects and/or contractors who participated in the design, construction, evaluation and/or repair of the Condominium and/or the units therein.

(Emphasis added.)

Absent from appellants' complaint is any mention of Atlas Air Conditioning Co., Belfast Contracting, Inc., Cochran Plumbing, Inc., Dolco Aluminum, Inc., Plus One Masonry, Reifman & Blum Associates, Inc., Sun Precast Co., Inc., or Vanco Enterprises, Inc. Appellants never set forth any acts or omissions committed by these appellees that would serve as a basis for an imposition of liability; rather, they "dump ... all [appellees] into the same pot." No facts are alleged. No boundaries of litigation are defined. No mechanism is provided for the speedy resolution of frivolous claims. The only notice provided is to those "developers, architects and/or contractors who participated in the design, construction, evaluation and/or repair of the Condominium and/or the units therein." Indeed, counsel for appellants conceded at oral argument that the facts pleaded do not support a cause of action in negligence or breach of contract, but maintained that they have sufficiently provided facts to support a cause of action in indemnity and/or contribution. In light of such insufficient allegations, we concur with the judgment of the trial court as to those appellees not named within the facts surrounding the alleged grounds for recovery.

### *Justiciability*

Finally, appellants presented a non-justiciable claim with regard to all appellees, as it was not yet ripe. A

controversy is ripe when " 'there are interested parties assert-ing adverse *claims* upon a state of facts *which must have accrued* wherein a legal decision is sought or demanded.' " *Boyds Civic Ass'n v. Montgomery County Council*, 309 Md. 683, 690, 526 A.2d 598 (1987)(quoting *Patuxent Oil Co. v. County Comm'rs*, 212 Md. 543, 548, 129 A.2d 847 (1957))(em-phasis added). "[T]he declaratory judgment process is not available to decide purely theoretical questions or questions that may never arise...." *Hamilton v. McAuliffe*, 277 Md. 336, 340, 353 A.2d 634 (1976) (citations omitted). To address issues which are non-justiciable because they are not ripe "would place courts in the position of rendering purely adviso-ry opinions, a long forbidden practice in this State." *Hatt v. Anderson*, 297 Md. 42, 46, 464 A.2d 1076 (1983). "Generally, an action for declaratory relief lacks ripeness if it involves a request that the court 'declare the rights of parties upon a state of facts which has not yet arisen, [or] upon a matter which is future, contingent and uncertain.' " *Id.*

Here, appellants seek the following remedies:

In the event that [appellants], individually or jointly, are held or found to be liable to any party to the Underlying Litigation, then the [appellees], together and individually, are liable to [appellants] for contribution.

. . .

In the event that [appellants], individually or jointly, are held or found to be liable to any party to the Underlying Litigation, then the [appellees], together and individually, are liable to [appellants] for contractual indemnification.

As clearly stated above, appellants' claims are predicated upon future events which may never occur—a finding in favor of plaintiffs in the Underlying Suit. Payment, therefore, is a condition precedent to the accrual of appellants' right of action. Appellants freely admit that they had yet to make any payment to the plaintiffs in the Underlying Suit. Indeed, the Underlying Suit was still pending at the time of the hearing on appellees' motions to dismiss. "[A]ll [Maryland] courts who have had occasion to consider the matter have agreed that the rights both to indemnification and to contribution, whether

based on contract or tort, accrue at the time of payment and not before." *Southern Maryland Oil Co. v. Texas Co.*, 203 F.Supp. 449, 452–53 (D.Md.1962). Appellants' complaint, therefore, clearly sought a declaratory judgment—a declaration of appellants' rights which were "future, contingent and uncertain." *Hatt*, 297 Md. at 46, 464 A.2d 1076.

That appellants' right of action had yet to accrue is further supported by statute. Pursuant to C.J. § 3–1402(b), "[a] joint tort-feasor is not entitled to a money judgment for contribution until the joint tort-feasor has by payment discharged the common liability or has paid more than a *pro rata* share of the common liability." As stated above, that appellants have yet to make payment to the plaintiffs in the Underlying Suit is not in dispute. Appellants' claim for contribution is, therefore, not ripe.

Nevertheless, appellants maintain that they have expended a considerable amount of money in the defense of the Underlying Suit. Such an argument clearly fails in light of the American Rule [5] concerning attorney's fees, which prohibits the recovery of attorney's fees as consequential or compensatory damages, absent a statute, rule, or contract to the contrary. *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 355 Md. 566, 590, 735 A.2d 1081 (1999). The sole exception to the

---

**5.** "The American rule stands as a barrier to the recovery, as consequential damages, of foreseeable counsel fees incurred in enforcing remedies for the breach." *Collier v. MD–Individual Practice Ass'n*, 327 Md. 1, 13, 607 A.2d 537 (1992). The rule has been part of the jurisprudence of this country for nearly 200 years:

> During the late colonial period, legislation provided for fee recovery as an aspect of comprehensive attorney fee regulation. But this regulatory scheme did not long survive the Revolution. During the first half of the nineteenth century, lawyers freed themselves from fee regulation and gained the right to charge clients what the market would bear. As a result, the right to recover attorney fees from an opposing party became an unimportant vestige. This triumph of fee contracts between lawyer and client as the financial basis of litigation prepared the way for legislators and judges to proclaim the principle that one party should not be liable for an opponent's legal expenses.

*Id.* at 19–20, 607 A.2d 537 (quoting Leubsdorf, *Toward A History of the American Rule on Attorney Fee Recovery*, 47 Law & Contemp Probs 9, 9 (1984)).

American Rule exists when an insured files suit against his or her insurance company to enforce the insurer's obligations under the third-party liability provisions of his or her policy. *Id.* at 591, 735 A.2d 1081. We are clearly not faced with such a situation in the case at hand. Maryland case law simply does not support the argument that the expenditure of any defense costs triggers the accrual of the cause of action for indemnification or contribution. *Id.* at 592, 735 A.2d 1081. ("Maryland law has never recognized fee shifting in breach of contract actions, absent contractual provision, statute, or rule. We leave that law as we find it." *Id.*) The fact that appellants may or may not have expended a considerable amount of money in legal fees is of no consequence to the issue of ripeness, as discussed above. The trial court properly dismissed appellants' cause of action for failure to state a claim upon which relief may be granted.

It is noteworthy that appellants declined to join appellees as third parties to the Underlying Suit. Curiously, appellants' counsel insists that a third-party claim in the Underlying Suit was not filed "for tactical and legal reasons," citing the applicable Statute of Repose; however, in light of the disposition of the case, such an approach hardly seems logical. Although we are sympathetic to the position in which appellants currently find themselves, there is little that can be done to rectify it. The Maryland Rules explicitly permit indemnification and contribution claims to co-exist with their underlying suits in a third-party action *before damages accrue.* Had appellants impleaded appellees as third parties, appellants' contingent claim against appellees would have been sustained:

A defendant, as a third-party plaintiff, may cause a summons and complaint ... to be served upon a person not previously a party to the action *who is or may be liable to the defendant for all or part of a plaintiff's claim against the defendant.*

Rule 2–332(a).

A third-party complaint is, by its very nature, a contingent claim, as it alleges that, in the event the defendant is found

liable to the plaintiff, the third-party defendant is, in whole or in part, liable to the defendant. *Hartford Accident & Indem. Co. v. Scarlett Harbor Assoc.*, 109 Md.App. 217, 674 A.2d 106 (1996),[6] *aff'd*, 346 Md. 122, 695 A.2d 153 (1997). This is precisely the remedy sought by appellants here; however, they opted to follow a different route. Indeed, appellants' counsel conceded that, had he filed the instant action as a third-party claim, none of the arguments set forth by appellees would have merit; however, he maintained that there were valid reasons behind his decision to file this as a separate cause of action.[7] Regardless of their reasons for pursuing this route—whether it was related to the contractual arbitration provisions included in the contracts of sale—it is impermissible for the instant appeal to serve as the basis for a circumvention of the rules.

As stated above, the record disclosed that appellants failed to state a claim upon which relief may have been granted. Moreover, appellants' alleged failure to file an engineer's certificate and the applicability of the Economic Loss Doctrine would have defeated appellants' claims in any event.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**

---

**6.** Interestingly, appellants rely on *Hartford Accident*, pointing out that "[t]he only difference between the developer's claims in *Scarlett* and [appellants'] claims here is that the *Scarlett* claims were third-party claims rather than claims filed in a separate suit." It is this difference, however, that renders their claim unavailing.

**7.** At oral argument before us, appellants' counsel stated that, ideally, the Hobson's choice of electing between a third-party action and the course actually pursued could have been avoided had the trial judge granted appellants' request to consolidate the case at hand with the Underlying Suit. The court, however, was not obliged to do so. *See* Md. Rule 2–503.